Docket No. 104922.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

SANTOS ALVAREZ *et al.*, Indiv. and on Behalf of All Others Similarly Situated, Appellants, v. MARIA PAPPAS, Treasurer and *ex-officio* Collector of Cook County, Illinois, Appellee.

*Opinion filed April 17, 2008.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Karmeier, and Burke concurred in the judgment and opinion.

Justice Kilbride dissented, with opinion.

## OPINION

Plaintiffs are the owners of various parcels of real estate in Cook County. In 2005, they filed a class action complaint against defendant treasurer, alleging that they had made duplicate payments of their real estate taxes and seeking a return of their money. Most of the plaintiffs had paid taxes in escrow to their respective lenders. When plaintiffs received their tax bills, they paid them, apparently unaware that their lenders were also paying the same bills, resulting in the taxes being paid twice. The earliest duplicate payments were made in 1990. Defendant filed a motion to dismiss under section 2–619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2–619(a)(5) (West 2006)), alleging that the five-year statute of limitations contained in section

20–175 of the Property Tax Code (Code) (35 ILCS 200/20–175 (West 2006)) had expired and that plaintiffs' request for a refund was, therefore, untimely. The circuit court of Cook County agreed and dismissed plaintiffs' complaint. The appellate court affirmed the circuit court's judgment. 374 Ill. App. 3d 39.

## BACKGROUND

A complete statement of the facts in this case is contained in the appellate court's opinion. Briefly, plaintiffs filed their complaint in September 2005, alleging that they had overpaid their taxes and seeking a refund. The complaint contained six counts, alleging causes of action for (1) conversion; (2) violation of equal protection and due process; (3) unlawful taking without just compensation; (4) unjust enrichment; (5) violation of the Uniform Disposition of Unclaimed Property Act (Unclaimed Property Act) (765 ILCS 1025/1 *et seq.* (West 2006)); and (6) violation of state pensioners' rights.

In their complaint, plaintiffs alleged that defendant was the only county treasurer in the state who refused to refund duplicate tax payments when the refunds were requested more than five years after the payment had been made. Plaintiffs alleged that defendant lacked authority to collect the duplicate taxes or to disburse them to taxing districts. They further alleged that defendant had knowledge at the time plaintiffs made their payments that no taxes were then due and owing. As stated, defendant filed a motion to dismiss the complaint on the grounds that the five-year statute of limitations contained in section 20–175 of the Code had expired. The circuit court agreed and dismissed the complaint. The appellate court affirmed. 374 Ill. App. 3d 39.

In the appellate court, plaintiffs argued that their overpayments were not tax payments and were thus not subject to section 20–175. They further argued that their request for a return of the payments were not claims for a "refund." They also argued that the payments constituted tangible property subject to the Unclaimed Property Act. The appellate court rejected all of these contentions. The court also found that a reading of the language of section 20–175, together with the legislative history of the statute, demonstrates that plaintiffs' tax payments were overpayments of their taxes and were therefore subject

to the statute of limitations contained therein. 374 Ill. App. 3d at 48. This court granted plaintiffs' petition for leave to appeal (210 Ill. 2d R. 315(a)). We now affirm the judgment of the appellate court.

## ANALYSIS
### I. Standard of Review

The question of whether a cause of action was properly dismissed under section 2–619(a)(5) of the Code of Civil Procedure is reviewed *de novo*. *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99 (2004). We are also called upon in this case to interpret section 20–175 of the Code. The interpretation of a statute is a question of law that is subject to *de novo* review. *Wisniewski v. Kownacki*, 221 Ill. 2d 453, 460 (2006).

### II

Section 20–175 of the Code provides in pertinent part:

> "If any property is twice assessed for the same year, or assessed before it becomes taxable, and the erroneously assessed taxes have been paid either at sale or otherwise, *or have been overpaid by the same claimant or by different claimants*, the County Collector, upon being satisfied of the facts in the case, shall refund the taxes to the proper claimant. *** A claim for refund shall not be allowed unless a petition is filed within 5 years from the date the right to a refund arose." (Emphasis added.) 35 ILCS 200/20–175 (West 2006).

This section provides an exception to the voluntary payment doctrine. Under that doctrine, a taxpayer may not recover taxes that are voluntarily paid, even if the taxing body imposed or assessed the taxes illegally. Such taxes may be recovered only if the recovery is authorized by statute. *Getto v. City of Chicago*, 86 Ill. 2d 39, 48 (1981). This court has explained the doctrine as follows:

> " 'It has been a universally recognized rule that money voluntarily paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on the ground that the claim was illegal. It has been deemed necessary not only to show that the

claim asserted was unlawful, but also that the payment was not voluntary; that there was some necessity which amounted to compulsion, and payment was made under the influence of such compulsion.' " *Getto*, 86 Ill. 2d at 48-49, quoting *Illinois Glass Co. v. Chicago Telephone Co.*, 234 Ill. 535, 541 (1908).

It is undisputed that plaintiffs requested a refund of their duplicate payments more than five years after they were paid to defendant. Thus, if section 20–175 applies to plaintiffs' payments, any refund requests are barred.

III

In an effort to remove their duplicate payments from the operation of section 20–175, plaintiffs argue that their payments were not "tax payments." They reason that they were simply mistaken payments of property tax assessments that had already been satisfied. According to plaintiffs, their making duplicate payments was no different than if they had inadvertently given defendant too much money or had left cash on the counter at defendant's office. Such funds belong, not to defendant, but to the taxpayer, and the monies should be returned. Thus, plaintiffs reason, such payments would not constitute tax payments and a return of those funds would not be a "refund." The appellate court rejected this argument, declining to characterize plaintiffs' payments as anything other than tax payments. Recognizing that they have cited little authority for their argument, plaintiffs contend that they should not have the burden of showing their right to a return of their duplicate payments. They attempt to shift that burden to defendant, arguing that at the time they made their payments, their taxes had already been paid and defendant was aware of that fact.[1]

---

[1] In reviewing plaintiffs' first amended complaint, we note an allegation that plaintiff Phillip Douglas paid the second installment of his 1998 property taxes on October 22, 1999. His escrow agent then paid the same installment on November 1, 1999. Thus, it is not accurate to say that each plaintiff paid his or her taxes at a time when no taxes were due. However, because the escrow agents would have paid plaintiffs' taxes with money collected from plaintiffs, we do not find the timing of the payments to be

-4-

Thus, they argue, defendant had no authority to accept payments for taxes that were not then due and no authority to transmit those payments to the taxing districts.

Plaintiffs cite this court's decision in *Gannaway v. Barricklow*, 203 Ill. 410 (1903), as support for their position. *Gannaway*, however, is not analogous to plaintiffs' situation. In *Gannaway*, the plaintiff, who was administrator of an estate, was summoned before the county board of review and informed that the decedent had failed to pay property taxes for the years 1898 to 1901. The total of the taxes allegedly owed was $75.64. Faced with the threat of a 10% penalty if the taxes were not paid by a certain date, the plaintiff paid the taxes. The plaintiff then discovered that no assessment had been entered on the assessor's book and that no taxes had been levied or extended. He filed suit to recover the money he had paid. The county treasurer admitted that he had no claim to the money, but argued that the plaintiff's payment was a voluntary payment of a tax and could not be recovered. A jury rendered a verdict for the plaintiff. This court affirmed, finding that the treasurer had no authority to collect or receive the money from the plaintiff. It was not a tax and did not appear on any book as a tax. In addition, the court concluded that because the taxing districts had not levied the tax, the money could not be distributed to them and, in fact, the money did not belong to them. The voluntary payment doctrine did not apply because the money paid by the plaintiff was not a tax. The court noted that the money was in the treasurer's hands without authority of law; thus, it belonged to the plaintiff and the treasurer was equitably bound to refund it. *Gannaway*, 203 Ill. at 412-13.

In the case at bar, there is no claim that the taxes were not levied or extended. Plaintiffs do not contend that the tax bills they received were improper in any way. Their sole claim is that because the taxes had already been paid, nothing was owed on the tax bills and, therefore, the payments were something other than tax payments.

Plaintiffs argue that section 20–170 of the Code (35 ILCS 200/20–170 (West 2006)) supports their description of their payments

_____

significant.

as inadvertent payments rather than payment of taxes. That section is entitled "Double Payment" and provides:

> "When taxes on a property have been paid more than once for the same year, by different claimants, the county collector shall report to the county clerk all surplus taxes so received, together with the names of the claimants. Certified copies of the report, or the county clerk's record thereof, shall be prima facie evidence in all courts of the payment of tax on the property therein described for the year or years mentioned. The township collectors shall report to the county collector taxes paid more than once, by different claimants for the same year, and the county collector shall report to the county clerk." 35 ILCS 200/20–170 (West 2006).

Plaintiffs seize upon the word "surplus" as meaning that no taxing district has a right to rely on the payments or receive them. Plaintiffs also believe that section 20–170 "implicitly" directs that these surplus funds are not to be distributed to taxing districts and could not have been included in any district's levied amount. According to plaintiffs, these surplus payments are not treated as tax payments and they reason that their duplicate payments should also not be treated as tax payments. We note that plaintiffs cite no authority for their interpretation of section 20–170. That section simply contains a reporting requirement. The reports sent to the county clerk may then be used as *prima facie* evidence in court of payment of "tax" on particular parcels of real estate. The very use of the word "tax" by section 20-170 in describing the double payments undercuts plaintiffs' argument that such payments are not taxes.

The Code does not treat excess property tax payments as nonpayments or as payments of something other than a tax; rather, such payments are described as "overpayments" of taxes. The legislature anticipated that there will be situations in which taxpayers may overpay their taxes and it has provided mechanisms to obtain a refund of those taxes. For example, section 21–60 (35 ILCS 200/21–60 (West 2006)) of the Code, entitled "Refund of overpayment; accelerated billing," provides that in any county which uses accelerated billing, if a taxpayer pays more in estimated taxes than is due for the entire year as shown on the actual tax bill, the county collector "shall refund the amount of the overpayment to the

person who paid the estimated installments." Section 20–175 also describes certain excess payments as "overpayments."

In support of its characterization of plaintiffs' payments as overpayments of their taxes, the appellate court cited a United States Supreme Court decision, *United States v. Dalm*, 494 U.S. 596, 108 L. Ed. 2d 548, 110 S. Ct. 1361 (1990). That case involved a taxpayer who paid gift tax on certain payments she had received. Later, the Internal Revenue Service (IRS) determined that the taxpayer should have paid income tax instead. After petitioning the tax court for a redetermination and settling with the IRS, the taxpayer sought refund of the amount she had paid in gift tax. However, the statute of limitations had expired and the district court rejected the taxpayer's contention that her suit was timely under the doctrine of equitable recoupment. The court of appeals reversed. The Supreme Court affirmed the district court. In a footnote responding to a point made by Justice Stevens in dissent, the Court stated that there was no difference between a "refund of overpaid gift taxes" and a "claim for recovery of a tax overpayment." The Court noted that the statute applied to claims for refund of a tax "overpayment." According to the Court, the commonsense interpretation of "overpayment" is that "a tax is overpaid when a taxpayer pays more than is owed, for whatever reason or no reason at all." *Dalm*, 494 U.S. at 609 n.6, 108 L. Ed. 2d at 562 n.6, 110 S. Ct. at 1368 n.6.

In determining the meaning of undefined terms in a statute, a court may turn to the dictionary for assistance. *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 15 (1991). Webster's dictionary defines "overpayment" as: "payment in excess of what is due." Webster's Third New International Dictionary 1609 (1986). Plaintiffs do not dispute that they paid more than was due on their taxes.

We reject plaintiffs' attempt to characterize their payments as something other than tax payments and conclude that plaintiffs' payments are properly characterized as overpayments of their property taxes. In addition, as did the appellate court, we also reject plaintiffs' argument that their request for return of their money was not a claim for a "refund." Black's Law Dictionary defines "refund" as "[t]he return of money to a person who overpaid, such as a taxpayer who overestimated tax liability or whose employer withheld too much tax

from earnings." Black's Law Dictionary 1307 (8th ed. 2004). Since plaintiffs requested a return of their overpaid taxes, their claims are for a refund of their taxes.

IV

Plaintiffs also argue that their payments constituted tangible personal property subject to the Unclaimed Property Act. Plaintiffs claim that defendant violated that law by failing to turn the money over to the state Treasurer. The Unclaimed Property Act requires persons who are in possession of abandoned tangible and intangible personal property belonging to another to timely remit the property to the state Treasurer. Property is presumed abandoned if it is unclaimed by the owner for a period of five years. 765 ILCS 1025/2 (West 2006). Thereafter, the state assumes custody of the property and is responsible for its safekeeping. 765 ILCS 1025/14 (West 2006). The state Treasurer is required to publish notice to the owner of the property that all claims to the property must be directed to the state. 765 ILCS 1025/12 (West 2006). Ownership of the property remains with the owner and never vests in the state. *Canel v. Topinka*, 212 Ill. 2d 311, 327 (2004), quoting *Presley v. City of Memphis*, 769 S.W.2d 221, 223-24 (Tenn. App. 1988).

Plaintiffs rely on *Canel*; however, that reliance is misplaced. In *Canel*, the issue was whether the state could retain dividends issued on shares of stock that were presumed abandoned and delivered to the state. This court held that the state could not retain the dividends because they were the private property of the owner of the stock. *Canel*, 212 Ill. 2d at 323-24. The difference between the situation in *Canel* and plaintiffs' case is that, in *Canel*, the owner of the stock did not transfer ownership of the stock to the state. Here, plaintiffs did not retain ownership of their funds; they transferred ownership to defendant. Plaintiffs' payments of the taxes were made pursuant to tax bills sent to them by defendant. They did not just leave money on a counter somewhere. Plaintiffs intended to pay the amounts they did, they intended to pass title to the funds to defendant, and they intended those payments to be applied to the tax bills they had received. That plaintiffs were mistaken in believing that the tax bills had not otherwise been paid does not change the character of the payments. Although plaintiffs argue that defendant had no authority to receive or

retain their overpayments, they cite no authority for this proposition. The Property Tax Code mandates that defendant, as county collector, mail tax bills to property owners. 35 ILCS 200/20–5 (West 2006). Tax payments received by the county collector in Cook County must be disbursed on a monthly basis upon receipt to the taxing districts. See 35 ILCS 200/20–140 (West 2006). Section 20–145 imposes a monetary penalty for willful failure to disburse tax monies as required. 35 ILCS 200/20–145 (West 2006). We find nothing improper in defendant's acceptance of plaintiffs' payments.

We also reject plaintiffs' claim that the Estrays and Lost Property Act (765 ILCS 1020/0.01 *et seq.* (West 2006)) applies to their payments. Section 27 of that Act requires that any finder of lost money must notify the owner, if his or her identity is known, and return the money to the owner. 765 ILCS 1020/27 (West 2006). Plaintiffs argue that defendant knew the identity of those who made the payments at issue here, but made no effort to return the funds to plaintiffs. This argument lacks merit. Plaintiffs did not lose their money. They intended to pay their money to defendant with the expectation that defendant apply the money to their respective property tax bills.

V

We now turn to the question of whether plaintiffs' claims for refund are barred. This requires us to construe section 20–175 of the Code. The principles guiding our analysis are familiar. The primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. *General Motors Corp. v. State of Illinois Motor Vehicle Review Board*, 224 Ill. 2d 1, 13 (2007). All other rules of statutory construction are subordinate to this cardinal principle. *In re Detention of Lieberman*, 201 Ill. 2d 300, 312 (2002), citing *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001). In determining legislative intent, the first step is to examine the language of the statute, which is the most reliable indicator of the legislature's objectives in enacting a particular law. *Yang v. City of Chicago*, 195 Ill. 2d 96, 103 (2001). The statutory language must be afforded its plain, ordinary, and popularly understood meaning. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279 (2003). Where the language is clear and unambiguous, the statute must be given effect as written

without resort to further aids of statutory construction. *Krautsack v. Anderson*, 223 Ill. 2d 541, 553 (2006). In construing a statute, we presume that the legislature did not intend absurdity, inconvenience or injustice. *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 40 (2001).

The General Assembly amended the predecessor to section 20–175 in 1975 to add the words regarding overpaid taxes. Pub. Act 79–184, §1, eff. October 1, 1975. Prior to that amendment, the statute, section 286 of the Revenue Act of 1939, was entitled "Refund of erroneous payment–Appeal." It provided in relevant part as follows:

> "If any real or personal property shall be twice assessed for the same year, or assessed before it becomes taxable, and the taxes so erroneously assessed shall have been paid either at sale or otherwise, *or have been twice paid by different claimants*, the circuit court, on petition of the person paying same, or his agent, and being satisfied of the facts in the case, shall direct the county collector to refund such taxes and deduct the amount thereof, pro rata, from the moneys due the various taxing bodies or their legal successors ***." (Emphasis added.) Ill. Rev. Stat. 1973, ch. 120, par. 767.

Plaintiffs cite cases which they say demonstrate that section 20–175 applies only in cases of erroneous assessment. All but one of these cases, however, were decided many years prior to the 1975 amendment at issue here. Accordingly, those cases do not address the meaning of the current version of the statute. Plaintiffs do cite two postamendment cases. One case is *Belt Ry. Co. of Chicago v. Hynes*, 157 Ill. App. 3d 697 (1987). There, a railroad company filed an action for refund of taxes paid to the county. Pursuant to law, the state taxed the railroad's operating property and the county taxed all other real estate, known as "noncarrier real estate." The plaintiff railroad claimed that it had paid both taxes on the same land. The appellate court determined that the railroad had sued the wrong entity, as the land had been classified by the state as noncarrier real estate and, if any refund was due, it was from the state, not the county. The court did find merit in the railroad's allegation that the county had issued two identification numbers to the same parcel of land and had taxed it twice. The court opined that this would entitle the railroad to recovery

under former section 286. *Belt Ry. Co.*, 157 Ill. App. 3d at 698-99. This case does not support plaintiffs' argument, as it does not stand for the proposition that the statute does not apply to overpayments of taxes.

The second case plaintiffs cite is *Stuart Town Homes Corp. v. Rosewell*, 176 Ill. App. 3d 59 (1988). There, the plaintiff, owner of a common parcel of real estate used for the benefit of individual townhouse owners, brought an action for recovery of taxes, alleging that the common parcel had been twice assessed, once to plaintiff and once to each owner's individual tax parcel. The plaintiff claimed that it was owed a refund under former section 286. The appellate court rejected this argument, noting that the plaintiff had failed to allege facts in its complaint demonstrating that the property had been twice assessed. The court noted that the record showed that the property was listed only once under its legal description and permanent index numbers. *Rosewell*, 176 Ill. App. 3d at 62. We fail to see how this case supports plaintiffs' argument.

Plaintiffs argue that the plain language of section 20–175 of the Code demonstrates that the statute applies only to tax payments made due to erroneous assessments of property. According to plaintiffs, the clause referring to taxes that have been overpaid is not an independent clause; rather, it modifies the preceding clause that refers to taxes paid on property that has been twice assessed or on property before it becomes taxable. Defendant argues, on the other hand, that the plain language of section 20–175 applies to overpayments of property taxes, as well as to payments made pursuant to the erroneous assessment of property. Defendant also points to the title of section 20–175 as proof of the legislature's intent. The section is entitled "Refund for erroneous assessments or overpayments." Indeed, the title of a statute may provide guidance as to the meaning of the statutory language if the title sheds light on some ambiguous word or phrase in the statute; it cannot limit the plain meaning of the text. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 430 (2002). Here, we note that the title contains the word "or," suggesting that section 20–175 encompasses two separate categories of payments: (1) payments pursuant to erroneous assessments, and (2) overpayments of taxes.

-11-

We disagree with defendant's argument that the plain language of the statute supports her interpretation of section 20–175. Instead, we agree with plaintiffs that the clause that says "or have been overpaid by the same claimant or by different claimants" modifies the preceding clause regarding the erroneous assessment of taxes. This is not the end of our analysis, however. In determining the General Assembly's intent, we may consider not only the language of the statute, but also the purpose and necessity for the law, the evils sought to be remedied, and the goals to be achieved. *Cryns*, 203 Ill. 2d at 280.

Clearly, the legislature, in amending former section 286, intended to change the statute's meaning. The word "overpaid" is broader than the phrase "twice paid." One can overpay one's taxes, yet not have paid them twice. By the same token, anyone who has "twice paid" his or her taxes where only one payment was due has, by definition, overpaid the taxes. The inclusion of the word "overpaid" would seem to indicate that the General Assembly intended to broaden the scope of former section 286. In addition, the amendment changed the words "twice paid by different claimants" to "overpaid by the same claimant or by different claimants." This, too, indicates an intent to broaden the scope of the statute. The plain language of section 20–175 does not, however, give effect to this apparent intent. For instance, it is difficult to see how taxes paid pursuant to an erroneous assessment can also be overpaid. It is not the fact that taxes have been overpaid in that situation that is important; it is the fact that (1) the assessment was erroneous, and (2) the taxes were not owed and should not have been paid at all. Taxes paid pursuant to an erroneous assessment are simply "paid." In construing a statute, we presume that the legislature did not intend absurd, inconvenient, or unjust results. *Vine Street Clinic v. Healthlink, Inc.*, 222 Ill. 2d 276, 282 (2006). While the word "overpaid" is broader than "twice paid," reading section 20–175 to encompass only overpayments of erroneously assessed taxes does not make sense. Because of these concerns, we find that the meaning of the language of the statute is unclear and ambiguous. We look, therefore, to the statute's legislative history to resolve the ambiguity and to discern the legislature's true intent in amending the statute.

As we have noted, the predecessor to section 20–175 was amended in 1975 to add the "overpaid" language. The amendment originated as House Bill 184. In discussing the bill, Representative

Schlickman stated that "House Bill 184, as it was originally introduced, created a new paragraph in the Revenue Act providing for a refund by the county collector in case any installment of real estate taxes is paid twice in error. It was the opinion of the Cook County Collector that instead of adding a new amendment to the Revenue Code, that an existing *** paragraph should be amended." 79th Ill. Gen. Assem., House Proceedings, March 19, 1975, at 12-13 (statements of Representative Schlickman). Later, Representative Schlickman noted that the bill "concerns itself with the problem that confronts real estate property taxpayers who *** have paid an installment twice ***. Presently, there is no statutory authority in the Revenue Act by which county collectors can make refund of over-payment by taxpayers." 79th Ill. Gen. Assem., House Proceedings, March 20, 1975, at 48 (statements of Representative Schlickman). In the Senate debate on the bill, Senator Moore stated, "House Bill 184 provides for refunds by the county collector in cases where an installment of real estate taxes has been paid twice in error. *** This does give the county collector the authority to refund such payments. *** [T]here's nothing on the books now that allows them to do it." 79th Ill. Gen. Assem., Senate Proceedings, May 15, 1975, at 227 (statements of Senator Moore).

The legislative history thus confirms that in amending the predecessor to section 20–175, the General Assembly intended to broaden the scope of the statute to include overpayments of property taxes without regard to whether those overpayments were pursuant to erroneous assessments. To adopt plaintiffs' reading of the statute would deprive property owners whose overpayment of their taxes does not involve an erroneous assessment of the ability to obtain a refund. Refunds would only be allowed in the limited circumstances provided in section 21–60 the Code. That section applies where a taxpayer has paid more real estate taxes in the first installment than is owed for the entire year. Section 21–60 allows a refund of the overpaid taxes. That section applies only in counties that have accelerated billing. 35 ILCS 200/21–30 (West 2006). Refunds of overpayment of taxes that fall within the scope of section 20–175 are not included in section 21–60. Thus, in many, if not most, cases, taxpayers would not be able to receive refunds of overpaid taxes due to the existence of the voluntary payment doctrine. Yet, the purpose

-13-

of the amendment was to remedy an omission in the property tax laws and give taxpayers the right to claim refunds of their overpaid taxes. To give effect to the language of the statute, as written, would defeat the remedial purpose of the amendment. Accordingly, we conclude that, to give effect to the legislature's intent, we must construe section 20–175 as permitting refunds of overpaid taxes, regardless of whether any erroneous assessment of property is involved. Accordingly, plaintiffs' overpayment of their taxes are subject to section 20–175 and their claims for refund are barred because they were made more than five years after plaintiffs made the overpayments. As this court noted in *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 267 (2001), the right to request a refund of taxes generally accrues at the time the taxes are paid.

We are not unsympathetic to the plaintiffs' predicament. They paid taxes that were not owed and the voluntary payment doctrine, which is often harsh in its application, precludes them from receiving a refund absent statutory authority. It is unfortunate that plaintiffs did not realize their error sooner. However, the legislature has established a mechanism for obtaining a refund of overpaid taxes and taxpayers must comply with its terms to receive a refund.

We therefore conclude that plaintiffs' complaint was properly dismissed as untimely.


## CONCLUSION

For the reasons stated, we conclude that plaintiffs' claims for refunds of their overpaid taxes are subject to the limitations period set forth in section 20–175 of the Code and that their action for refunds is therefore time-barred. The judgment of the appellate court, which affirmed the judgment of the circuit court, is affirmed.


*Affirmed.*


JUSTICE KILBRIDE, dissenting:

I believe the language of section 20–175 of the Property Tax Code is clear and unambiguous. The plain language of the statute applies only to tax payments based on erroneous assessments. Plaintiffs'

claims for a refund of their duplicate tax payments do not involve erroneous assessments. Therefore, section 20–175 does not apply to these circumstances, and the circuit court erred in dismissing plaintiffs' complaint. Accordingly, I respectfully dissent.

In this case, the defendant filed a motion to dismiss plaintiffs' complaint under section 2–619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2–619(a)(5) (West 2006)). Defendant asserted that plaintiffs' request for a refund of their duplicate tax payments was untimely because the five-year limitations period in section 20–175 of the Property Tax Code had expired. Thus, the only issue is whether section 20–175 applies in these circumstances to bar a refund of plaintiffs' duplicate property tax payments. The issue presents a question of statutory construction.

The primary goal in construing a statute is to determine and give effect to the legislature's intent. *Metzger v. DaRosa*, 209 Ill. 2d 30, 34-35 (2004). The best indication of the legislature's intent is the statutory language, given its plain and ordinary meaning. *People ex rel. Ryan v. Agpro, Inc.*, 214 Ill. 2d 222, 226 (2005), quoting *Caveney v. Bower*, 207 Ill. 2d 82, 87-88 (2003). When the language of a statute is plain and unambiguous, we must apply it as written without resort to aids of statutory construction. *Krautsack v. Anderson*, 223 Ill. 2d 541, 553 (2006). We will not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions not expressed by the legislature. *People ex rel. Department of Professional Regulation v. Manos*, 202 Ill. 2d 563, 568 (2002).

Section 20–175 provides in pertinent part:

> "If any property is twice assessed for the same year, or assessed before it becomes taxable, and the erroneously assessed taxes have been paid either at sale or otherwise, or have been overpaid by the same claimant or by different claimants, the County Collector, upon being satisfied of the facts in the case, shall refund the taxes to the proper claimant. *** A claim for refund shall not be allowed unless a petition is filed within 5 years from the date the right to a refund arose." 35 ILCS 200/20–175 (West 2006).

According to its plain language, section 20–175 applies only to the claims identified by the introductory clause, "[i]f any property is twice

assessed for the same year, or assessed before it becomes taxable." The plain language, therefore, applies only to erroneous assessments. The following word, "and," indicates additional conditions for a refund of payments based on erroneous assessments. The remaining language provides, as additional conditions for a statutory refund, that the erroneously assessed taxes have been paid at sale or otherwise, or have been overpaid by the same claimant or different claimants.

The majority appears to agree that the plain language of section 20–175 supports plaintiffs' argument that it applies only to payments based on erroneous assessments. Slip op. at 11-12. The majority even asserts that "[t]o give effect to the language of the statute, as written, would defeat the remedial purpose of the amendment." Slip op. at 14. When statutory language is clear, however, we are required to give effect to the statute as written. *Krautsack*, 223 Ill. 2d at 553. The majority's failure to construe the statute according to its plain language is inconsistent with our rules of statutory construction.

The plain language of section 20–175 is limited to the refund of erroneously assessed taxes. Plaintiffs' claims do not involve erroneous assessments. Rather, they are based on the inadvertent duplicate payments of property taxes. The plain language of section 20–175 does not apply to this case. Accordingly, I believe that the circuit court erred in granting defendants' motion to dismiss based on section 20–175.

Given the facts of this case and the majority's view of the apparent ambiguity in the statute, the legislature may wish to amend section 20–175. The plaintiffs diligently paid their property taxes, and it may be viewed as fundamentally unfair to deny them a refund of the duplicate payments. The legislature may certainly wish to provide a mechanism for seeking a refund in these circumstances or alter the five-year limitation period in the statute. Those decisions are for the legislature, however. We are bound to construe the statute according to its plain language. The plain language of the statute shows that section 20–175 does not apply here. Accordingly, I respectfully dissent.