No. 2--07--1017       Filed:  6-5-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CHRISTOPHER SENESE, | ) | Appeal from the Circuit Court |
| | ) | of Lake County |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 06--MR--535 |
| | ) | |
| THE VILLAGE OF BUFFALO GROVE, | ) | Honorable |
| | ) | David M. Hall, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Christopher Senese, filed a complaint against defendant, the Village of Buffalo Grove (Village), seeking, inter alia, a declaratory judgment that the Village must pay health insurance premiums for plaintiff and his family pursuant to section 10 of the Public Safety Employee Benefits Act (Act) (820 ILCS 320/10 (West 2006)).  Following a bench trial, the trial court entered judgment in plaintiff's favor.  The Village argues on appeal that plaintiff was ineligible, as a matter of law, to receive benefits under the Act.  We disagree and therefore affirm the judgment of the trial court.

The relevant facts are not in dispute.  On February 24, 2004, plaintiff was employed by the Village as a full-time police officer.  On that date, plaintiff had been assigned to monitor traffic at the intersection of Half Day Road and Prairie Road.  He did so from his squad car, which was parked at the side of Willow Parkway.  While plaintiff was seated in the squad car, another vehicle struck

it from behind. The driver of that vehicle was cited for driving with an obstructed windshield (625 ILCS 5/12--503(d) (West 2004)) and failing to reduce speed to avoid an accident (625 ILCS 5/11--601(a) (West 2004)). As a result of the collision, plaintiff suffered injuries that disabled him from service as a police officer, and he was awarded a line-of-duty disability pension.

Section 10 of the Act provides, in pertinent part:

"(a) An employer who employs a full-time law enforcement, correctional or correctional probation officer, or firefighter, who *** suffers a catastrophic injury or is killed in the line of duty shall pay the entire premium of the employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee until the child reaches the age of majority or until the end of the calendar year in which the child reaches the age of 25 if the child continues to be dependent for support or the child is a full-time or part-time student and is dependent for support. *** If the injured employee subsequently dies, the employer shall continue to pay the entire health insurance premium for the surviving spouse until remarried and for the dependent children under the conditions established in this Section. ***

* * *

(b) In order for the law enforcement, correctional or correctional probation officer, firefighter, spouse, or dependent children to be eligible for insurance coverage under this Act, the injury or death must have occurred as the result of the officer's response to fresh pursuit, the officer or firefighter's response to what is reasonably believed to be an emergency, an unlawful act perpetrated by another, or during the investigation of a criminal act." 820 ILCS 320/10(a), (b) (West 2006).

The term "catastrophic injury" has been construed to mean an injury entitling a police officer or firefighter to receive a line-of-duty disability pension. Krohe v. City of Bloomington, 204 Ill. 2d 392, 400 (2003); O'Loughlin v. Village of River Forest, 338 Ill. App. 3d 189, 197 (2003). To receive a line-of-duty disability pension, a police officer's disability must stem from a "sickness, accident or injury incurred in or resulting from the performance of an act of duty." 40 ILCS 5/3--114.1(a) (West 2006). The term "act of duty" is defined, in pertinent part, as "[a]ny act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life." 40 ILCS 5/5--113 (West 2006).

Because plaintiff received a line-of-duty disability pension, the Village concedes that he suffered a catastrophic injury within the meaning of section 10(a). The Village maintains, however, that plaintiff is ineligible for benefits under the Act due to section 10(b). Specifically, the Village contends that plaintiff's injury was not the result of an "unlawful act" within the meaning of section 10(b).

The question presented is one of statutory construction and our review is de novo. Alvarez v. Pappas, No. 104922, slip op. at 3 (April 17, 2008). In construing a statute, the principal objective is to ascertain and give effect to the intent of the legislature. Alvarez, slip op. at 9. A determination of legislative intent begins with the language of the statute, which must be given its "plain, ordinary, and popularly understood meaning." Alvarez, slip op. at 9. "Where the language is clear and unambiguous, the statute must be given effect as written without resort to further aids of statutory construction." Alvarez, slip op. at 9-10. However, "courts must avoid reading statutory language either too literally or too broadly, and must try to garner what the legislature intended." Village of Lake Villa v. Bransley, 348 Ill. App. 3d 280, 284 (2004). Thus, as this court has observed:

"A literal interpretation is not controlling where the spirit and intent of the General Assembly in enacting a statute are clearly expressed, its objects and purposes are clearly set forth, and a literal interpretation of a particular clause would defeat the obvious intent [citation]; where literal enforcement of a statute will result in great injustice that was not contemplated by the General Assembly [citation]; or where a literal interpretation would lead to an absurd result [citation]." Grever v. Board of Trustees of the Illinois Municipal Retirement Fund, 353 Ill. App. 3d 263, 266-67 (2004).

Moreover, "words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute." Chatham Foot Specialists, P.C. v. Health Care Service Corp., 216 Ill. 2d 366, 382 (2005). However, "[a] court is not permitted to ignore the plain meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express." Forest Preserve District of Du Page County v. Loren & Gisela Brown Family Trust, 323 Ill. App. 3d 686, 692 (2001).

The Act provides no definition of "unlawful act," so we may consult the dictionary for guidance in determining the term's meaning. Alvarez, slip op. at 7. "Unlawful act" has been defined as "[c]onduct that is not authorized by law; a violation of a civil or criminal law." Black's Law Dictionary 1574 (8th ed. 2004). If the term is given its full breadth, it clearly encompasses the conduct of the motorist whose vehicle struck plaintiff's and caused plaintiff's disabling injuries. The motorist was cited for driving with an obstructed windshield and failing to reduce speed to avoid a collision, in violation of sections 11--601(a) and 12--503(d) of the Illinois Vehicle Code (625 ILCS 5/11--601(a), 12--503(d) (West 2004)). The question, then, is whether consideration of the Act as a whole limits the breadth of the term. The Village argues that it does. In particular, the Village

relies on what it refers to as the "principle" of sui generis and the principle of noscitur a sociis. "Sui generis" simply means "[o]f its own kind or class; unique or peculiar." Black's Law Dictionary 1475 (8th ed. 2004). The Village may have confused this term with "ejusdem generis," which is a canon of construction related to noscitur a sociis.

Under the principle of noscitur a sociis, " '[t]he meaning of questionable words or phrases in a statute may be ascertained by reference to the meaning of words or phrases associated with it.' " People v. Qualls, 365 Ill. App. 3d 1015, 1020 (2006), quoting Hayes v. Mercy Hospital & Medical Center, 136 Ill. 2d 450, 477 (1990) (Calvo, J., dissenting). The Village contends that "unlawful act perpetrated by another" must be interpreted in connection with section 10(b)'s other criteria for providing coverage to a catastrophically injured police officer and the officer's family. Those criteria are that (1) the injury results from a response to fresh pursuit; (2) the injury results from a response to what is reasonably believed to be an emergency; and (3) the injury occurs during the investigation of a criminal act. According to the Village, these criteria pertain to situations where the officer performs duties that are uniquely associated with police work and that entail some exceptional level of risk beyond even the "special risk" that characterizes an act of duty. The Village submits that, in accordance with the principle of noscitur a sociis, "unlawful act" should be read in a similar light to mean an unlawful act causing injury to a police officer performing duties that are uniquely associated with police work and that involve the quantum of risk attendant to fresh pursuit, responding to an emergency, or investigating a crime.

This court has noted that "[t]he classic gloss of 'noscitur a sociis' is that 'general and specific words which are capable of an analogous meaning[,] being associated together, take color from each other, so that the general words are restricted to a sense analogous to the less general.' " People v.

Taylor, 349 Ill. App. 3d 839, 843 (2004), quoting Misch v. Russell, 136 Ill. 22, 25 (1891). However, the words "unlawful act perpetrated by another" are not particularly analogous to the other three criteria set forth in section 10(b). 820 ILCS 320/10(b) (West 2006). It cannot be said that these words are simply a more general formulation of the other three criteria. Rather, the criteria are distinct, so the doctrine of noscitur a sociis does not directly apply here. Nor is the doctrine of ejusdem generis applicable. That doctrine "provides that when a statutory clause specifically describes several classes of persons or things and then includes 'other persons or things,' the word 'other' is interpreted as meaning 'other such like.' " People v. Vue, 353 Ill. App. 3d 774, 778 (2004), quoting Farley v. Marion Power Shovel Co., 60 Ill. 2d 432, 436 (1975).

More importantly, we disagree with the broader premise of the Village's argument: that the criteria set forth in section 10(b) embody a distinct category of risk beyond the "special risk" that must be established to obtain a line-of-duty pension. Police officers function in various capacities involving a broad range of risks. Pursuing a suspected criminal may, indeed, be among the more dangerous duties an officer is called upon to perform, but responding to an emergency or investigating a crime is not categorically more dangerous than other types of police work involving a "special risk." Rather, the risk will vary considerably with the particular circumstances of the emergency or investigation. For instance, examining a secure crime scene might involve relatively little risk. Thus, risk does not appear to be the touchstone of the criteria set forth in section 10(b).

Our reluctance to embrace the Village's analysis is magnified by the Village's failure to articulate a workable definition of "unlawful act" or offer a helpful example. Although the Village insists that this criterion applies only to an officer performing duties involving some level of risk above the "special risk" inherent in an "act of duty," the Village proposes no standard by which to

determine whether a particular risk is sufficient. Instead, the Village merely offers the example of an officer who is attacked while responding to a report of a crime in progress. Presumably, however, a report of a crime in progress would generally qualify as an emergency. Thus, in the Village's scenario, the officer would be eligible for benefits on the basis that he or she was injured while responding to an emergency; that the injury was due to an unlawful act would be of no consequence.

Accordingly, we disagree with the Village's argument that reading the Act as a whole narrows the scope of the phrase "unlawful act." The motorist whose vehicle struck plaintiff's committed unlawful acts within the ordinary meaning of the phrase.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

GILLERAN JOHNSON, P.J., and HUTCHINSON, J., concur.