No. 2--08--0570      Filed: 11-25-09

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re APPLICATION OF THE COUNTY TREASURER AND ex officio COUNTY COLLECTOR OF LAKE COUNTY, ILLINOIS, FOR JUDGMENT AND ORDER OF SALE AGAINST REAL ESTATE RETURNED DELINQUENT FOR THE NONPAYMENT OF GENERAL TAXES AND SPECIAL ASSESSMENTS FOR THE YEAR 2003 AND PRIOR YEARS | ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Lake County.<br><br>No. 07--TD--57 |
| (HIBCO Investments, Petitioner-Appellee, v. Home Equity Savers, Ltd., Respondent-Appellant). | ) ) ) ) | Honorable Valerie Boettle-Ceckowski, Judge, Presiding. |

JUSTICE McLAREN delivered the opinion of the court:

Home Equity Savers, Ltd. (Home Equity), appeals the trial court's order granting HIBCO Investments' motion to expunge Home Equity's tax redemption of a certain parcel of real property (Subject Property).  Home Equity also appeals the trial court's denial of its motion for reconsideration.  Before Home Equity purportedly redeemed the Subject Property, it entered into a contract to purchase the Subject Property from Richard A. Iverson (Iverson).  On appeal, Home Equity argues that, as a contract purchaser, it had an equitable interest in the Subject Property sufficient to redeem.  We agree, and we reverse and remand for further proceedings.

I.  BACKGROUND

A.  The Valrie A. Brence Will

On September 13, 1993, Valrie A. Brence executed a will that was witnessed by two individuals, one being Linda R. Harmeyer. Brence's will referred to the Valrie Brence Trust, a revocable living trust executed on the same date as her will. The will did not identify the trust's trustee(s), successor trustee(s), beneficiary(ies), successor beneficiary(ies), or terms. Also on September 13, 1993, Brence conveyed 1675 Rice Street, Waukegan, Illinois, the Subject Property, to the Valrie Brence Trust. The deed was recorded on September 20, 1993, and it indicated that Valrie Brence is the trustee of the Valrie Brence Trust.

Paragraph I of the will directed the executor to pay all of Brence's debts, including taxes, penalties, and interest assessed on the property in her estate.

Paragraph II provided:

"I give all the rest of my estate not already in trust *** to the Trustee of my Revocable Living Trust of this date, as may be amended, with the provisions of the Trust which is incorporated by reference in this Will."

Paragraph III appointed the trustee of the Valrie Brence Trust as executor of her will. These three paragraphs contained the entire provisions of Brence's will.

No party was able to locate or produce a copy of the Valrie Brence Trust during the proceedings before the trial court and no copy of the trust is included in the record on appeal.

Brence died on August 3, 2003. Iverson was listed on the death certificate as Brence's son; Brence's obituary stated that he was her only son.

B. Tax Sale and Sales Contract

On December 6, 2004, the delinquent 2003 real estate taxes on the Subject Property were sold or assigned to HIBCO. On May 2, 2007, HIBCO filed a petition for a tax deed and the period for redemption was extended to September 27, 2007.

On September 27, 2007, Iverson entered into a contract to sell the Subject Property to Home Equity for $55,000. Home Equity agreed to pay the $10,559.53 to redeem the outstanding taxes for the Subject Property upon receipt of a warranty deed from Iverson. Paragraph 4 of the contract provided in relevant part:

> "Seller [Iverson] represents and warrants that <u>he has full power to convey property as Successor Trustee under the Revocable Living Trust of his mother Valrie Brence</u>. If Seller is not the Successor Trustee and/or has no power to convey the property, he shall immediately repay Purchaser [Home Equity] all funds paid to him by Purchaser and this Contract shall be null and void." (Emphasis added.)

Iverson never declared the contract null and void.

On September 27, 2007, Home Equity timely redeemed in its own name the delinquent taxes for the Subject Property in the full amount of $10,559.53. Home Equity recorded the warranty deed, which identified Iverson as "Divorced and not since remarried" and as the grantor.

### C. HIBCO's Motion to Expunge Home Equity's Redemption

On October 10, 2007, HIBCO filed a motion to expunge Home Equity's redemption, alleging, <u>inter alia</u>, that the Valrie Brence Trust was the record holder of title to the Subject Property, that Iverson had no interest in the Subject Property, and that Home Equity lacked standing to redeem.

Home Equity filed a response denying that the Valrie Brence Trust was the record holder of title to the Subject Property; asserting that Iverson was Brence's sole heir and that he conveyed the Subject Property to Home Equity by warranty deed; denying that Iverson did not have an interest in the Subject Property as grantor; and asserting that Home Equity had standing to redeem. Home Equity attached to its response a copy of the warranty deed.

HIBCO filed its reply arguing, <u>inter alia</u>, that the warranty deed Home Equity attached to its response had been altered, in that next to "The Grantor RICHARD A. IVERSON" someone had inserted in handwriting the phrase, "AS TRUSTEE". HIBCO alleged that this insertion was not included in the original recorded warranty deed that HIBCO attached to its reply. HIBCO also argued that nothing in the record indicated Iverson as the trustee of the Valrie Brence Trust and that Brence's will did not mention Iverson or make any bequest to specific heirs; rather, the will left all of the assets to the Valrie Brence Trust.

The trial court heard arguments and denied HIBCO's motion on January 15, 2008, stating, in part:

"So it appears from the documents that I have attached thus far, from the arguments, that [Iverson] could have contracted with [Home Equity] the redeemer; that he did so and that based on that[, Home Equity was] an interested party."

D. HIBCO's Motion For Reconsideration

HIBCO filed a motion for reconsideration and a memorandum in support of its motion. HIBCO argued that Home Equity had filed a false and misleading copy of the recorded warranty deed, failed to establish any authority on the part of Iverson to sign any deed, and failed to contradict that Home Equity was a stranger to the Subject Property and had no standing to redeem it. In addition, HIBCO's memorandum argued that Home Equity attempted to redeem the taxes only on its own behalf, that the recorded warranty deed was outside the chain of title and conveyed no title or interest in the Subject Property to Home Equity, and that Home Equity knew the warranty deed conveyed no title and thus attached to its response the altered deed.

1. Iverson's Affidavit

HIBCO attached to its memorandum a February 13, 2008, affidavit of Iverson in which he stated that he was the only child of Brence and that on September 27, 2007, he executed the

deed and a document entitled "Contract to Purchase Real Estate." In his affidavit, Iverson also stated that Brence was survived by grandchildren, including Iverson's daughter, Emily, and that Emily lived at the Subject Property but that she did not consent to the purchase agreement. Iverson also stated the following:

7. *** "When I executed the [Contract to Purchase Real Estate]:

A. I did not represent that I was the trustee of the Trust.

B. [Home Equity] knew that I could not and would not act on behalf of the Trust and that is why when [Home Equity] prepared the Contract, it included language in Paragraphs 1 and 2 of the document assuring itself that it would not have to pay the purchase price if, as I orally stated during negotiations, I really had no authority to bind the Trust.

C. At the time the Contract was negotiated, I was under terrible economic stress in that I knew that taxes regarding the Property had been sold and that I was running out of time to raise funds for redemption purposes. I was assured that [Home Equity] would return the property to me if [Home Equity] could not clear up matters regarding the Living Trust.

D. I signed the Contract individually and would never have signed as a representative of the Trust. I signed a provisional deed conveying the Property to [Home Equity] and affixed my signature as an individual because I could not represent that I was a trustee of the Trust. Any deed purporting to bear my signature or identify me as 'Trustee' is false.

E. Had I had time to confer with other persons or had I been under less pressure, I never would have agreed to sell to [Home Equity] and I never would have accepted the conditional purchase price identified in the Contract.

F.  Specifically, but without limiting the generality of the foregoing, Emily, my daughter, lived in and continues to live in the house located on the [Subject] Property and I did not obtain Emily's prior consent to the Contract.

8.  I have never authorized [Home Equity] to represent that I signed any deed regarding the [Subject] Property as 'Trustee' nor have I ever authorized [Home Equity] to represent, on my behalf, that I am the trustee of the Trust or that I am the sole beneficiary of the Trust."

### 2. Trial Court's Findings and Ruling

On April 15, 2008, after hearing arguments from the parties, the trial court granted HIBCO's motion for reconsideration, reversed its prior ruling, ruled in favor of HIBCO, and granted HIBCO's motion for expungement of Home Equity's redemption, stating in part:

"I find based on all of the pleadings, all of the arguments and all of the documentation that Richard Iverson could not have conveyed any interest in the property because he did not have any interest in that property to convey to Home Equity via the sales contract.

Based on this finding [Home Equity] could not have redeemed the property from the owner or have become an interested party based on an invalid or null and void sales contract."

### E.  Home Equity's Motion for Reconsideration

Home Equity filed a motion for reconsideration and a motion to reopen discovery.  Home Equity argued, inter alia, that it was not but should be given an opportunity to cross-examine Iverson and Emily and that the Valrie Brence Trust was not available.  Home Equity alleged that Iverson had maintained a joint bank account with Brence and that the address for both account holders was the address of the Subject Property.  Iverson had signatory power for the joint bank

account and paid from that account the first installment of the Subject Property's 2005 real estate taxes.

Home Equity also alleged that the Valrie Brence Trust could not be found and that, "absent the Trust, Valerie [sic] Brence died intestate." Iverson was Brence's "sole heir at law and hence the sole legal owner of the [Subject Property]." Further, Home Equity alleged that Emily occupied and occupies the Subject Property and pays rent to Iverson.

Attached to Home Equity's motion for reconsideration was the affidavit of Linda R. Harmeyer, a witness to Brence's will. Harmeyer stated in her affidavit that, to the best of her knowledge, Iverson was the trustee referred to in Brence's will. HIBCO filed a memorandum response.

On May 20, 2008, after hearing argument, the trial court denied Home Equity's motion for reconsideration. On the same day, the trial court also entered an order directing the county clerk to issue a tax deed to HIBCO. Home Equity filed this timely appeal from the trial court's April 15 and May 20, 2008, orders.

## II. ANALYSIS

On appeal, Home Equity argues that the trial court erred by determining that it did not have a redeemable interest in the Subject Property despite the facts that Home Equity was a contract purchaser and that it had a recorded warranty deed to the Subject Property. Home Equity contends that, because it was a contract purchaser, it had an equitable interest in the Subject Property sufficient to redeem. HIBCO essentially argues that both Home Equity and Iverson were strangers to the Subject Property and that Home Equity had no right to redeem on its own behalf or on Iverson's behalf.

Section 21--345(a) of the Property Tax Code (Code) provides in part:

"A right to redeem property from any sale under this Code shall exist in <u>any owner or person interested in that property</u>, other than an undisclosed beneficiary of an Illinois land trust, whether or not the interest in the property sold is recorded or filed. <u>Any redemption shall be presumed to have been made by or on behalf of the owners and persons interested in the property and shall inure to the benefit of the persons having the legal or equitable title to the property redeemed</u>, subject to the right of the person making the redemption to be reimbursed by the persons benefited. No redemption shall be held invalid by reason of the failure of the person redeeming to have recorded or filed the document evidencing an interest in the property prior to redemption, other than an undisclosed beneficiary of an Illinois land trust." (Emphases added.) 35 ILCS 200/21--345(a) (West 2006).

Whether a party has a right to redeem property sold at a tax sale under section 21--345 of the Code is a question of statutory interpretation, which this court reviews <u>de novo</u>. <u>Alvarez v. Pappas</u>, 229 Ill. 2d 217, 219-20 (2008).

In construing a statute, our principal objective is to ascertain and give effect to the intent of the legislature. <u>Alvarez</u>, 229 Ill. 2d at 228. Where the language is clear and unambiguous, the statute must be given its plain, ordinary, and popularly understood meaning without resort to further aids of statutory construction. <u>Alvarez</u>, 229 Ill. 2d at 228.

The law favors redemptions, and the redemption statute will be liberally construed unless injury to the tax purchaser results. <u>In re Application of the County Treasurer & ex officio Collector</u>, 323 Ill. App. 3d 1044, 1049 (2001). A party challenging a redemption has the burden to show that the redeemer had no legal or equitable interest in the subject premises. <u>In re Application of the County Treasurer & ex officio County Collector</u>, 327 Ill. App. 3d 622, 625 (2002) (<u>Random Corp.</u>).

A complete stranger to the property has no right to redeem, but section 21--345 of the Code does not require complete legal title in order to redeem. In re Application of the Cook County Treasurer, 185 Ill. 2d 428, 433 (1998) (Loop Mortgage). A party seeking to redeem a property sold at a tax sale need have only an "undefined interest" in the property. People v. Hess, 7 Ill. 2d 192, 197 (1955). Courts have expanded the class of persons with a redeemable interest to include persons who have something less than legal title, record title, or interests of record. See, e.g., Loop Mortgage, 185 Ill. 2d at 432.

Courts have held that the following persons have possessed an interest sufficient to redeem: an equitable title holder under an agreement to convey (Franzen v. Donichy, 9 Ill. 2d 382 (1956)); a beneficial owner of stock owned by a dissolved corporation, even though the property was not listed as an asset in the dissolution of the corporation (People v. Hess, 7 Ill. 2d 192 (1955)); an adverse possessor (In re Application of DuPage County Collector, 98 Ill. App. 3d 950 (1981)); a person who had lived on the property for more than 30 years even though he was no longer a record title holder (In re Application of County Collector, 49 Ill. App. 3d 1048 (1977)); a neighbor who acted as an agent for a mortgagee (Purdy v. C.H. Strong Elevator, Inc., 29 Ill. App. 3d 894 (1975)); an assignee of a beneficial interest in a land trust (In re Application of the County Treasurer, 16 Ill. App. 3d 385 (1973)); the executor of an estate (In re Application of the County Collector for Judgment & Sale against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1961 & Prior Years, 72 Ill. App. 2d 272 (1966)); and a grantee of an heir of a contract purchaser who received no deed (In re Application of the County Treasurer of Du Page County, Illinois, for Judgment & Sale of Real Estate for General Taxes for the Year 1960, 63 Ill. App. 2d 135 (1965)).

In Franzen, 9 Ill. 2d 382, Anna Frost, the owner of the subject property, entered into a contract to convey all of her real property to the Danish Old Peoples Home. Franzen, 9 Ill. 2d at

385-86. The tax buyer purchased the subject property's delinquent taxes. <u>Franzen</u>, 9 Ill. 2d at 385. The Danish Old Peoples Home then conveyed its interest in the subject property to the future tax redeemers by quitclaim deed. The tax redeemers then redeemed the subject property. <u>Franzen</u>, 9 Ill. 2d at 386. The trial court ordered the county clerk to expunge the redemption. <u>Franzen</u>, 9 Ill. 2d at 385. Our supreme court reversed the trial court, holding that a contract to convey the property created a redeemable equitable interest in the property. <u>Franzen</u>, 9 Ill. 2d at 386, 387, 389. Our supreme court stated that the Danish Old Peoples Home acquired an "equitable interest in the [subject] property" and that "the [tax redeemers] could redeem [it] even though their interest was merely equitable in nature." <u>Franzen</u>, 9 Ill. 2d at 386-87.

In <u>Loop Mortgage</u>, Lee signed a contract to sell the subject property to Smith. <u>Loop Mortgage</u>, 185 Ill. 2d at 430. Lee conveyed a warranty deed to Smith, but Smith never recorded the deed. <u>Loop Mortgage</u>, 185 Ill. 2d at 430. Lee then executed a contract for sale of the subject property to Williams and gave Williams power of attorney, and Williams redeemed the subject property from delinquent taxes. <u>Loop Mortgage</u>, 185 Ill. 2d at 431. The tax buyer moved to expunge the redemption, arguing that Williams had no redeemable interest, because Lee had previously conveyed a warranty deed to Smith, which extinguished Lee's interest in the property. <u>Loop Mortgage</u>, 185 Ill. 2d at 431. The trial court expunged the redemption. <u>Loop Mortgage</u>, 185 Ill. 2d at 431. The appellate court reversed the trial court and our supreme court affirmed the appellate court. <u>Loop Mortgage</u>, 185 Ill. 2d at 430. Our supreme court reasoned that, although Williams had no right to redeem on Lee's behalf, because Lee had conveyed a warranty deed to Smith that extinguished all of Lee's interest in the subject property (<u>Loop Mortgage</u>, 185 Ill. 2d at 433-36), Williams, himself, did have a redeemable interest in the subject property because he signed a contract to purchase the property (<u>Loop Mortgage</u>, 185 Ill. 2d at 436-37). Our supreme court stated:

"Unlike the owner of record title who has neither an equitable nor a legal interest in the property [Lee], a contract purchaser [Williams] has an equitable interest in the property which gives him a right to redeem. [Citation.] Whether Williams actually closed on the property makes no difference; the contract to purchase itself is sufficient to create an equitable interest in the property." Loop Mortgage, 185 Ill. 2d at 437.

In a footnote our supreme court stated:

"Of course, our determination that Williams has an equitable interest in [the subject property] has absolutely no bearing on whether Williams actually owns the property or whether his interest is superior to any other party's interest in the property." Loop Mortgage, 185 Ill. 2d at 437 n.2.

Our supreme court held that Williams' contract to purchase the subject property gave him a redeemable interest in the subject property. Loop Mortgage, 185 Ill. 2d at 437.

In this case, Home Equity was a contract purchaser, as was Williams in Loop Mortgage. Iverson executed for Home Equity a sales contract and a warranty deed. In the contract, Iverson agreed that: "Seller represents and warrants that he has full power to convey property as Successor Trustee under the Revocable Living Trust of his mother Valrie Brence." We recognize that Iverson's statements in the subsequent affidavit raised questions concerning the validity of the contract. In his affidavit he stated that he was under economic duress when he signed the contract and that he "had no authority to bind the trust" as the trustee of the Valrie Brence Trust. However, Iverson never declared the sales contract null and void and he did not file any pleading seeking to rescind the sales contract.

Further, the contract " 'must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence.' " Clarendon America Insurance

-11-

Co. v. 69 West Washington Management LLC, 374 Ill. App. 3d 580, 585-86 (2007), quoting Air Safety, Inc. v. Teachers Realty Corp., 185 Ill. 2d 457, 462 (1999). Thus, the sales contract remains the best indication of Iverson's belief that he had the power to convey the Subject Property.

In addition, a witness to Brence's will stated that she believed that Iverson was the trustee of the revocable living trust referred to in Brence's will, meaning that everything, including the Subject Property, would belong to Iverson upon Valrie Brence's death. We conclude that the sales contract created a sufficient interest in the Subject Property and permitted redemption by Home Equity, the contract purchaser.

This case is similar to Loop Mortgage because in Loop Mortgage, even though Lee no longer had an equitable or legal interest in the subject property, our supreme court held that Williams still held a right to redeem, because he was a contract purchaser. Therefore, even if Iverson's interest in the Subject Property was questionable, the fact that Home Equity was a contract purchaser gives it a redeemable interest in the Subject Property. Borrowing from our supreme court's reasoning in Loop Mortgage, we note that the determination that Home Equity has an equitable interest in the Subject Property "has absolutely no bearing" on whether Home Equity "actually owns the property or whether [its] interest is superior to any other party's interest in the property." Loop Mortgage, 185 Ill. 2d at 437 n.2. "We recognize [its] equitable interest in the property solely for the purpose of determining whether [it] has the right to redeem the property after it is purchased at a tax sale." Loop Mortgage, 185 Ill. 2d at 437 n.2. The trial court erred when it determined that questions of title had a bearing on whether there was a redeemable interest.

HIBCO attempts to distinguish Loop Mortgage by noting that Lee was a record owner. However, HIBCO ignores that the General Assembly amended the Code, which eliminated the

requirement that a party seeking to redeem must have a recorded interest in the property. Ill. Rev. Stat. 1973, ch. 120, par. 734 (now codified, as amended, at 35 ILCS 200/21--345(a) (West 2006).

It also made no difference to our supreme court in Loop Mortgage whether the contract purchaser knew that the seller may have had no interest to convey because it had already conveyed its interest to another buyer who had already taken possession of the subject property. Loop Mortgage, 185 Ill. 2d at 437 ("Loop Mortgage insists Williams had knowledge of both the deed Lee conveyed to Smith and Smith's possession of 4446 S. Greenwood, but these arguments miss the mark"). Our supreme court explained: "Tax deed proceedings are not designed, nor are they the appropriate forum, for trying substantial disputes as to title." Loop Mortgage, 185 Ill. 2d at 437. Similarly, it does not matter in this case whether Home Equity knew that Iverson did not hold legal title before Home Equity entered into the purchase agreement with Iverson.

Of course, HIBCO is correct that "a complete stranger to the property has no right to redeem" (see Loop Mortgage, 185 Ill. 2d at 433); however, an equitable interest was all that was necessary to redeem. See Franzen, 9 Ill. 2d at 386-87. Further, "neither the constitution nor the [Revenue] Act nor case law requires a property interest be established so that it would rise to the level of ownership." Monreal v. Sciortino, 238 Ill. App. 3d 475, 478 (1992). Instead, Home Equity needed to have only an undefined interest in the property. See Hess, 7 Ill. 2d at 199.

Further, neither Iverson nor Home Equity was a stranger to the property. Contrary to HIBCO's contention, the record supports Iverson's claims that he was either an heir or a trustee of the Valrie Brence Trust and, therefore, could execute a deed in favor of Home Equity. There was no dispute that a witness to Brence's will stated that, to the best of her knowledge, Iverson was the trustee referred to in Brence's will; Iverson executed the contract to sell the Subject Property to Home Equity; Iverson never declared the contract null and void or filed a pleading to

rescind the contract; and Iverson executed the warranty deed to Home Equity. Therefore, it could be determined that Iverson was the trustee of the Valrie Brence Trust.

Even if it is later determined that Iverson is not the trustee referred to in paragraph II of Brence's will, it could be determined that he will inherit as Brence's only child and heir. It is uncontroverted that Iverson was Brence's only child. Where a testator has not disposed of all of his or her property through the terms of his or her will or where the will is declared invalid, the property passes to his or her heirs at law, under the laws of intestacy. In re Estate of Schlenker, 338 Ill. App. 3d 761, 763 (2003). Because the revocable trust cannot be found, it could be determined that Brence did not dispose of all of her property through the terms of her will. Therefore, Iverson, as Brence's only child, could inherit the Subject Property. See 755 ILCS 5/2--1(b) (West 2006) (rules of descent and distribution for intestacy; "(b) If there is no surviving spouse but a descendant of the decedent: the entire estate to the decedent's descendants per stirpes" (emphases added)). Because it could be determined that Iverson was Brence's heir, Iverson was not a stranger to the property.

In addition, Home Equity was not a stranger to the property, because it had a recorded interest via the warranty deed from Iverson. See Loop Mortgage, 185 Ill. 2d at 437-38. The fact that Home Equity did not have a contract with a record owner is irrelevant. Contrary to HIBCO's contention, our supreme court did not make such a distinction in Loop Mortgage.

HIBCO argues that Home Equity could not redeem because the warranty deed was not in the chain of title. Similarly, HIBCO argues that once Home Equity received and recorded the warranty deed, the purchase agreement merged into the deed. HIBCO contends that because the recorded warranty deed is a "wild" document outside the chain of title, it is not a basis for redemption. However, the deed did not have to be in the chain of title for Home Equity to have a

redeemable interest. A party may redeem even though its interest is merely equitable. Franzen, 9 Ill. 2d at 386.

### III. CONCLUSION

In conclusion, HIBCO had the burden of proving that Home Equity had no redeemable interest in the Subject Property (Random Corp., 327 Ill. App. 3d at 625) and it failed to do so. It is clear that Home Equity was not a stranger to the Subject Property. It had a definite ascertainable equitable interest. "In determining the quality and quantity of interest necessary to permit redemption, we must have in mind that the law recognizes both a legal and equitable interest, looks with favor upon redemptions and gives a liberal construction to the redemption laws unless injury results thereby to the purchaser at the tax sale." Application of County Treasurer, 63 Ill. App. 2d at 139. Here, HIBCO will suffer no injury, because the effect of the trial court's order will be to reimburse HIBCO for its expenditures with interest. See Application of County Treasurer, 63 Ill. App. 2d at 140. Both Iverson and Home Equity had either legal or equitable interests in the Subject Property. Therefore, the trial court erred by granting HIBCO's motion to expunge Home Equity's redemption and erred by directing the county clerk to issue HIBCO a tax deed to the Subject Property.

The judgment of the circuit court is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BURKE and HUDSON, JJ., concur.