# Illinois Official Reports

## Appellate Court

<div style="border:2px solid black; padding:20px; text-align:center;">

*Marquardt v. City of Des Plaines*, 2018 IL App (1st) 163186

</div>

| | |
|---|---|
| Appellate Court Caption | JOHN MARQUARDT, Plaintiff-Appellee, v. THE CITY OF DES PLAINES, a Municipal Corporation, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-16-3186 |
| Filed | February 6, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CH-9477; the Hon. Franklin U. Valderrama, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Ancel, Glink, Diamond, Bush, DiCianni & Krafthefer, P.C., of Chicago (Lucy B. Bednarek, of counsel), for appellant.<br><br>Morici, Figlioli & Associates, of Chicago (David Figlioli and Carl A. Virgilio, of counsel), for appellee. |
| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion.<br>Presiding Justice Neville concurred in the judgment and opinion.<br>Justice Mason dissented, with opinion. |

## OPINION

¶ 1 Plaintiff John Marquardt, a former police officer employed by the City of Des Plaines (City), filed a complaint against the defendant City after it denied his request for benefits pursuant to the Public Safety Employee Benefits Act (Act) (820 ILCS 320/1 *et seq.* (West 2010)). The parties subsequently filed cross-motions for summary judgment contesting Marquardt's eligibility for benefits under the Act, and after considering the filings, the circuit court entered judgment in favor of Marquardt and against the City, concluding that the City erred in finding that Marquardt was ineligible for benefits under the Act and in denying his petition for benefits. The City has appealed the court's ruling. For the reasons explained herein, we affirm the judgment of the circuit court.

¶ 2                                   BACKGROUND

¶ 3 The following facts have been adduced from the pleadings and accompanying exhibits. Marquardt commenced employment as a full-time police officer for the City on July 2, 1984. During his tenure as an officer, Marquardt was assigned to the City's traffic unit. At approximately 11:45 a.m. on August 12, 2010, while on duty, Marquardt pulled over a semitrailer truck that was being driven by George Khoshaba. The truck's tires were compressed, and it appeared to be operating with an overweight load. After effectuating the traffic stop, Marquardt directed Khoshaba to drive to a local weighing station so that his trailer could be weighed. Khoshaba complied, and Marquardt confirmed his suspicion that the truck was, in fact, overweight. After ascertaining the weight of Khoshaba's truck, Marquardt climbed up the truck's ladder to inspect the load. As he was doing so, Marquardt felt a "pop" in his left knee. He then carefully descended the ladder and proceeded to his patrol car, where he completed paperwork on the traffic stop. Marquardt then issued Khoshaba a traffic citation pursuant to section 15-111 of the Illinois Vehicle Code (625 ILCS 5/15-111 (West 2010)), which prohibits a driver from operating a vehicle over the permissible weight on an Illinois roadway. After issuing Khoshaba the citation and completing a "Des Plaines Police Overweight Report," Marquardt used his radio to inform dispatch and his supervisor that he had injured his knee and returned to the police department.

¶ 4 Marquardt was subsequently diagnosed with left medial and lateral meniscus tears in his left knee. He underwent surgery to repair his knee injury on November 22, 2010. Following the surgery, Marquardt completed a year of physical therapy and obtained other treatment; however, his condition did not improve, and he underwent a total knee replacement surgery on March 6, 2012. Following that procedure, Marquardt filed an application for a line-of-duty disability pension pursuant to section 3-114.1 of the Illinois Pension Code (40 ILCS 5/3-114.1 (West 2010)) with the City's Board of Trustees of the Police Pension Fund (Pension Board). A hearing on Marquardt's application subsequently took place, and on October 30, 2012, at the conclusion of that hearing, the Pension Board determined that Marquardt's injury was sustained while he was "on duty as a police officer for the City of Des Plaines and occurred 'in the performance of an act of duty' as defined by the Pension Code." Accordingly, the Pension Board awarded him a "duty disability pension *** in the amount of 65% of the salary attached to his rank as Patrol Officer, effective as of September 22, 2012, the date he last received any pay from the City."

¶ 5        Thereafter, Marquardt completed an application for health insurance benefits pursuant to the Act and submitted his application to the City. On November 21, 2014, Michael Bartholomew, the City's city manager, authored a letter to Marquardt, denying his request for benefits under the Act. In the letter, Bartholomew explained that although Marquardt's injury was "catastrophic" and occurred while on duty, Marquardt was not eligible for benefits under the Act because his injury did not occur under any of the four circumstances delineated in section 10(b) of the Act. That is, Marquardt's injury did not occur during a fresh pursuit, an emergency, a response to an unlawful act perpetrated by another, or an investigation of a criminal act. Bartholomew explained: "Under Section 6 of the City's PSEBA Policy, the City Manager makes the final determination regarding an applicant's eligibility for PSEBA benefits. Accordingly, I have reviewed your application and the administrative record, and it is my determination that your injury did not occur during a fresh pursuit, or as part of or a response to an emergency, or by an unlawful act perpetrated by another, or during the investigation of a criminal act. Because none of the circumstances prescribed in Subsection 10(b) of the PSEBA apply, your application must be denied."

¶ 6        Following the City's denial of his application for benefits under the Act, Marquardt filed a declaratory judgment action against the City.[1] He alleged that his "catastrophic" knee injury was sustained while he was on duty investigating a "criminal act" and that he thus met the requirements for benefits delineated in sections 10(a) and 10(b) of the Act. 820 ILCS 320/10(a), (b) (West 2010). Accordingly, he sought a declaration of his right to benefits under the Act and an order mandating the City to pay the monthly premiums for coverage under the City's health insurance plan.

¶ 7        The City filed an answer in which it admitted that Marquardt sustained his injury while on duty as a police officer for the City and during the performance of an act of duty. The City further admitted that Marquardt's injury was "catastrophic" within the meaning of the Act. The City, however, denied that Marquardt's injury was the result of his investigation of a criminal act. Moreover, the City asserted, as an affirmative defense, that Marquardt's "injury on August 12, 2010 did not occur in one of the following circumstances: (1) response to fresh pursuit, (2) response to what is reasonably believed to be an emergency, (3) the unlawful act by another, or (4) during the investigation of a criminal act. 820 ILCS 320/10(b)." Given that Marquardt's injury did not occur in the context of any of the four specific circumstances delineated in section 10(b) of the Act, the City contended that he was "not entitled to benefits under [the Act]."

¶ 8        The parties subsequently engaged in discovery, and Marquardt and Khoshaba were both deposed and provided details about the traffic stop that resulted in Marquardt's injury. Marquardt testified, in pertinent part, that he effectuated a traffic stop on Khoshaba because the truck he was driving had compressed tires and appeared to be slow to accelerate. Based on these observations, he believed that Khoshaba's vehicle was overweight and was being operated in contravention of section 15-111 of the Illinois Vehicle Code (625 ILCS 5/15-111 (West 2010)). He further testified that after ascertaining that Khoshaba was driving a truck that exceeded the permissible wheel and axel gross weight loads permitted under the Illinois

---

[1]Marquardt's complaint also contained a claim seeking administrative review of the City's denial of his request for benefits under the Act; however, that claim was dismissed and is not relevant to this appeal.

Vehicle Code, he climbed the ladder of Khoshaba's truck to inspect the load and determined that the truck was hauling broken concrete. Marquardt explained that he was required to identify and describe the load that Khoshaba was hauling in order to complete the requisite "Des Plaines Police Overweight Report" and to issue Khoshaba a traffic citation. He further testified that there was no way for him to inspect the load that Khoshaba was hauling without climbing up the truck to peer down into the open semitrailer. Marquardt explained that he felt something in his left knee pop when he was traversing up the ladder located near the front of Khoshaba's truck. After maneuvering himself down the ladder, he issued Khoshaba the citation, which resulted in a fine, and completed the "Des Plaines Police Overweight Report."

¶ 9 In his deposition, Khoshaba testified that on the date of the traffic stop, he was driving a trailer with an open top. He confirmed that there was no way to open the back of the trailer to show Marquardt the concrete he was hauling. He further confirmed that Marquardt climbed the ladder of his truck in order to identify the type of load that he was hauling. After being issued a traffic citation, Khoshaba testified that he pled guilty to violating the Illinois Vehicle Code and paid a fine.

¶ 10 After engaging in the aforementioned discovery, the parties filed cross-motions for summary judgment. In Marquardt's motion, he argued that there was no dispute that he met the prerequisites for benefits set forth in section 10(a) and (b) of the Act. Specifically, he argued that there was no dispute his knee injury was "catastrophic" within the meaning of section 10(a) of the Act because it resulted in his receiving a line-of-duty disability pension. He likewise argued that there was no dispute that Khoshaba's conduct in driving truck with an overweight load constituted both an "unlawful" and "criminal" act within the meaning of the Act and that his catastrophic knee injury was a direct result of Khoshaba's unlawful and criminal conduct, thus satisfying the criteria set forth in section 10(b) of the statute.

¶ 11 In its cross-motion for summary judgment, the City acknowledged that Marquardt had suffered a catastrophic injury, but argued that his injury had not been sustained during the course of one of the four scenarios contemplated by section 10(b) of the Act. Specifically, the City argued that Khoshaba's conduct in driving an overweight truck did not constitute a "criminal act" because it did not result in prison time or any other serious penalty; rather, it simply resulted in a monetary fine. As a result, the City argued that Marquardt's injury was not sustained during an investigation of a criminal act. The City conceded that Khoshaba's conduct in driving his overweight truck on an Illinois roadway constituted an "unlawful act," but argued that Marquardt's injury did not occur as a result of Khoshaba's unlawful act because it did not occur "during the [actual] commission of an unlawful act." Instead, the City reasoned that Marquardt's injury was sustained after the truck had already been stopped and during his subsequent inspection of the truck's load. As such, the City argued that there were no genuine issues of material fact that Marquardt was unable to meet the Act's eligibility requirements and requested the circuit court to enter summary judgment in its favor.

¶ 12 After reviewing the parties' filings, the circuit court entered judgment in favor of Marquardt and against the City. In a detailed written order, the circuit court agreed with the City that Khoshaba's conduct in driving an overweight vehicle did not constitute a "criminal act" pursuant to the Act. In doing so, the court interpreted the term "criminal act" to mean "an act that constitutes a felony or misdemeanor under Illinois law, *i.e.*, an act for which a sentence of imprisonment may be imposed." It reasoned that Khoshaba's violation of the Illinois Vehicle Code, which resulted in a fine, was not a criminal act within the meaning of the Act.

The court, however, agreed with the parties that Khoshaba's violation of the Illinois Vehicle Code constituted an "unlawful act perpetrated by another" as set forth in the Act. The court further found that Marquardt's catastrophic injury was sustained "as the result of" Khoshaba's unlawful act. In doing so, the court observed that the Act did not define the phrase "as the result of" and that the phrase had not been interpreted by any Illinois courts called upon to construe the Act. The circuit court then relied on an Illinois Supreme Court case equating the phrase "as a result of" in the context of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1996)) with "proximate cause." *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 140 (2002). Relying on *Oliveira*, the circuit court construed the phrase "as the result of" as used in the Act to impose a proximate cause requirement on individuals seeking benefits. The court further found that Marquardt's injury was proximately caused by Khoshaba's unlawful conduct because Khoshaba's conduct was both the cause in fact and legal cause of Marquardt's injury. Therefore, the court determined that Marquardt was entitled to benefits under the Act and ordered the City to "pay health insurance premiums for plaintiff pursuant to section 10 of the [Act]."

¶ 13    This appeal followed.

¶ 14                                    ANALYSIS

¶ 15    On appeal, the City contests the propriety of the circuit court's ruling on the parties' cross-motions for summary judgment. In doing so, the City reasserts the arguments it raised below and contends that "Marquardt's injury occurred after the unlawful act of driving an overweight truck was complete and, therefore, his injury was not the result of an unlawful act perpetrated by another."

¶ 16    Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). In reviewing a motion for summary judgment, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party to determine whether a genuine issue of material fact exists. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). A genuine issue of fact exists where the material relevant facts in the case are disputed, or where reasonable persons could draw different inferences and conclusions from the undisputed facts. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). To survive a motion for summary judgment, the nonmoving party need not prove his case at this preliminary stage of litigation; however, the plaintiff must present some evidentiary facts to support each element of his cause of action, which would arguably entitle him to a judgment. *Richardson v. Bond Drug Co. of Illinois*, 387 Ill. App. 3d 881 (2009); *Garcia v. Nelson*, 326 Ill. App. 3d 33, 38 (2001). Although summary judgment has been deemed a "drastic means of disposing of litigation" (*Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986)), it is nonetheless an appropriate mechanism to employ to expeditiously dispose of a lawsuit when the moving party's right to a judgment in its favor is clear and free from doubt (*Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001)). Where, as here, the parties file cross-motions for summary judgment, they agree that only a question of law is at issue, and they invite the court to decide that issue based on its review of the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28; *Morningside North Apartments I, LLC v. 1000 N. LaSalle, LLC*, 2017 IL App (1st) 162274, ¶ 11. A trial court's

ruling on a motion for summary judgment is subject to *de novo* review (*Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389 (2009)).

¶ 17    Construction of a statute is similarly subject to *de novo* review. *Village of Vernon Hills v. Heelan*, 2015 IL 118170, ¶ 18; *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395 (2003). "The fundamental objective of statutory construction is to ascertain and give effect to the intent of the legislature." *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 56. The best indication of the legislature's intent is the plain language of the statute. *People ex rel. Madigan v. Wildermuth*, 2017 IL 120763, ¶ 17; *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11. When reviewing the plain language of a statute, " 'words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute.' " *Senese v. Village of Buffalo Grove*, 383 Ill. App. 3d 276, 279 (2008) (quoting *Chatham Foot Specialists, P.C. v. Health Care Service Corp.*, 216 Ill. 2d 366, 382 (2005)).

¶ 18    The Act was passed by the Illinois legislature in 1997. Pub. Act 90-535, § 10 (eff. Nov. 14, 1997). The purpose of the Act is to continue the provision of employer-provided health insurance coverage for public safety employees and their families in the event that an employee is killed or catastrophically injured in the line of duty. *Heelan*, 2015 IL 118170, ¶ 20; *Nowak*, 2011 IL 111838, ¶ 16. In order to effectuate that purpose, section 10 the Act provides, in pertinent part, as follows:

> "§ 10. Required health coverage benefits.
>
> (a) An employer who employs a full-time law enforcement, correctional or correctional probation officer, or firefighter, who, on or after the effective date of this Act suffers a catastrophic injury or is killed in the line of duty shall pay the entire premium of the employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee until the child reaches the age of majority or until the end of the calendar year in which the child reaches the age of 25 if the child continues to be dependent for support or the child is a full-time or part-time student and is dependent for support. ***
>
> * * *
>
> (b) In order for the law enforcement, correctional or correctional probation officer, firefighter, spouse, or dependent children to be eligible for insurance coverage under this Act, the injury or death must have occurred *as the result of* the officer's response to fresh pursuit, the officer or firefighter's response to what is reasonably believed to be an emergency, *an unlawful act perpetrated by another*, or during the investigation of a criminal act." (Emphases added.) 820 ILCS 320/10(a), (b) (West 2010).

¶ 19    Based on the plain language of the statute, eligibility for benefits under the Act is limited to those individuals who suffer a catastrophic injury on or after the effective date of the Act as a result of the individual's response to a fresh pursuant, an emergency, an unlawful act perpetrated by another, or during an investigation into a criminal act. *Id.* The term " 'catastrophic injury' is a term of art, and it means an injury that results in the awarding of a line-of-duty disability pension." *Nowak*, 2011 IL 111838, ¶ 12 (citing *Krohe*, 204 Ill. 2d at 398-400); see also *Bremer v. City of Rockford*, 2016 IL 119889, ¶ 26 (emphasizing that a plaintiff cannot establish a catastrophic injury under section 10(a) of the Act simply by showing that he incurred an injury during the course of his employment; rather, the plaintiff "must establish an injury that resulted in a line-of-duty disability pension"); *Heelan*, 2015 IL

118170, ¶ 23 (noting that in construing the term "catastrophic injury," the court has "expressly equated the determination of a catastrophic injury with the award of a line-of-duty disability pension").

¶ 20    As a threshold matter, we note that there is no dispute that Marquardt's 2010 injury was sustained after the effective date of the Act and that his injury was "catastrophic" within the meaning of the Act because it resulted in him being awarded a line-of-duty disability pension. *Nowak*, 2011 IL 111838, ¶ 12. He thus satisfies the prerequisite for benefits set forth in section 10(a) of the Act. The relevant inquiry is thus whether Marquardt's injury was sustained in a manner provided for in section 10(b) of the statute, specifically, whether his injury was "the result of *** an unlawful act perpetrated by another." 820 ILCS 320/10(b) (West 2010).

¶ 21    The Act does not define the term unlawful act; however, in *Senese*, 383 Ill. App. 3d 276, the Second District construed the term to mean " '[c]onduct that is not authorized by law; a violation of a civil or criminal law.' " *Id.* at 279 (quoting Black's Law Dictionary 1574 (8th ed. 2004)). The court further determined that in accordance with that definition, violations of the Illinois Vehicle Code constitute unlawful acts within the meaning of the Act. *Id.* Accordingly, the court found that a police officer who was assigned to monitor traffic and was struck and injured by a driver operating his vehicle in contravention of several provisions of the Illinois Vehicle Code was injured as a result of an unlawful act perpetrated by another and entitled to benefits under the Act. *Id.* at 280-81.

¶ 22    The City acknowledges that under the definition of unlawful act set forth in *Senese*, Khoshaba's conduct in driving an overweight truck in violation of section 15-111 of the Illinois Vehicle Code constituted an unlawful act within the meaning of the Act. The City, however, submits that Marquardt's injury was not "the result of" Khoshaba's unlawful act. That is, Marquardt was not injured while Khoshaba was driving his overweight truck on an Illinois roadway; rather, he was injured after he had already stopped and weighed Khoshaba's vehicle. According to the City, "Marquardt's injury occurred after the unlawful act of driving an overweight truck was complete." Because he "was not injured *during* the actual commission of an unlawful act," the City argues that Marquardt cannot satisfy section 10(b) of the Act. (Emphasis added.)

¶ 23    We disagree. As set forth above, the plain language of section 10(b) of the Act provides that in order to be eligible for benefits, the law enforcement officer's injury must have occurred "*as the result of *** an unlawful act perpetrated by another.*" (Emphasis added.) 820 ILCS 320/10 (b) (West 2014). The parties agree that the Act does not define the phrase "as the result of" and that no Illinois court has expressly defined or construed that phrase as used in the Act. It is well-established that where a statute does not define a specific term or phrase, courts may consult dictionaries to ascertain the plain and ordinary meaning of the otherwise undefined word or phrase. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 8 (2009). Indeed, Illinois courts have routinely consulted dictionaries to ascertain the meaning of undefined terms in the Act. See, *e.g.*, *Gaffney*, 2012 IL 110012, ¶¶ 60-61 (consulting Webster's International Dictionary to ascertain the plain and ordinary meaning of the word "emergency" as used in the Act); *Senese*, 383 Ill. App. 3d at 279 (utilizing Black's Law Dictionary's definition of "unlawful act" to define that term as used in the Act). We note that Black's Law Dictionary defines the term "result" as "[a] consequence, effect, or conclusion." Black's Law Dictionary (10th ed. 2014). Merriam-Webster Dictionary equates the phrase "as a result" with the phrase "because of

something." Merriam-Webster Online Dictionary, https://www.merrian-webster.com/dictionary/as%20a%20result (last visited Oct. 3, 2017).

¶ 24    Keeping these definitions in mind, we conclude that Marquardt's catastrophic knee injury was clearly a consequence or effect of Khoshaba's unlawful act of driving an overweight truck on an Illinois roadway and was sustained because of Khoshaba's unlawful conduct. Marquardt's uncontradicted deposition testimony established that after he determined that Khoshaba's truck was overweight, he was required to issue Khoshaba a citation and complete a "Des Plaines Police Overweight Report" in order to fulfill his duties as a traffic officer for the City. The mandatory report, in turn, required Marquardt to specify the weight of the truck, the scales used to weigh the truck, and the "type of load" that the truck had been hauling. Marquardt further testified that in order to ascertain the type of load that Khoshaba's truck contained, he was required to scale the truck's ladder located near the front of the vehicle in order to view the contents of the semitrailer. Marquardt's knee injury occurred during his climb up the truck's ladder. During his own deposition, Khoshaba confirmed that Marquardt climbed the ladder of his truck in order to identify the type of load that he was hauling in his truck. Khoshaba explained that his trailer had an open top and that there was no way to open the back of the trailer in order to show Marquardt the broken pieces of concrete that he was hauling in his truck.

¶ 25    Based on our review of the record, there is no dispute that Khoshaba's unlawful violation of section 15-111 of the Illinois Vehicle Code, triggered Marquardt's duty as a traffic officer employed by the City to effectuate a vehicle stop, and to weigh the vehicle (625 ILCS 5/15-112(a) (West 2010)), and upon confirming his suspicion that Khoshaba's vehicle was overweight, he became duty-bound to complete the requisite "Des Plaines Police Overweight Report." Marquardt was not afforded any discretion regarding the completion of the required report; rather, he was required to provide comprehensive details about the traffic stop, including the "type of load" Khoshaba's vehicle was hauling. There is similarly no dispute that the only means available to Marquardt to ascertain the type of load that Khoshaba was hauling in order to complete the requisite "Des Plaines Police Overweight Report" was to climb the truck's ladder. It is thus clear that Marquardt's knee injury was indisputably a clear consequence and effect of Khoshaba's unlawful act of driving his truck in contravention of the Illinois Vehicle Code and occurred because of Khoshaba's unlawful conduct. We therefore conclude that Marquardt's catastrophic injury was "the result of" an "unlawful act perpetrated by another" within the meaning of the Act.

¶ 26    Although our dissenting colleague suggests that our approach improperly expands a municipality's liability for the cost of a former employee's health care to account for injuries sustained by a police officer, we respectfully disagree with the dissent's construction or interpretation of section 10 of the Act. We also find her hypothetical distinguishable from the facts in our case. Our colleague suggests the manner in which Marquardt sustained his catastrophic injury is akin to a situation in which a law enforcement officer falls down a set of stairs after responding "to a late-night complaint regarding a violation of a municipal noise ordinance." This hypothetical, however, fails to account for the section of the Illinois Vehicle Code that governed Marquardt's acts. Unlike the officer in our dissenting colleague's hypothetical, Marquardt was required by the Illinois Vehicle Code to stop the vehicle and weigh the vehicle. *Id.* His injury was incurred during the course of an Illinois Vehicle Code inspection, which was triggered by Khoshaba's unlawful act of operating an overweight

vehicle on an Illinois roadway. *Id.* The Illinois Vehicle Code inspection was not complete until after Marquardt ascertained the weight and identified the load of Khoshaba's vehicle (*id.*) and completed the requisite "Des Plaines Police Overweight Report." Finally, while we agree with the dissent that subsection 10(b) provides benefits for officers who investigate criminal activities, we find that subsection 10(b) also provides benefits for officers' injuries that occur as a result of a truck driver's unlawful acts. We find that the circuit court properly entered judgment in favor of Marquardt.

¶ 27    In doing so, we note that although we agree with the conclusion reached by the circuit court, we disagree with the approach it utilized. Specifically, we decline to equate the phrase "as the result of," as used in the Act, with proximate cause. In its written order, the circuit court correctly observed that our supreme court has construed the phrase "as a result of" as used in the Consumer Fraud and Deceptive Business Practices Act to mean proximate cause. See *Oliveira*, 201 Ill. 2d at 149 (quoting 815 ILCS 505/10a(a) (West 1996)). Our supreme court, however, has subsequently cautioned against introducing common law concepts of negligence and proximate cause into a statute when those concepts are not explicitly provided for in a statute. See *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 543 (1997) (finding that the appellate court erred in relying on principles of negligence and proximate cause when interpreting a provision in the Illinois Pension Code that contained the phrase "resulting from" when those concepts were not provided for in the plain language of the statute). Here, Marquardt's claim for benefits is a statutory action, not a common law negligence action. We therefore decline to deviate from the plain language of the statute and introduce a proximate cause element into the statute. See *id.* at 543-44. As set forth above, the plain language of the statute simply required Marquardt to establish that his catastrophic injury was the result of an unlawful act perpetrated by another and we find that he has done so. We thus affirm the judgment of the circuit court.

¶ 28                                            CONCLUSION

¶ 29    Affirmed.

¶ 30    JUSTICE MASON, dissenting:

¶ 31    I respectfully disagree with the majority's determination that Marquardt's catastrophic injury occurred "as a result of" Khoshaba's unlawful operation of an overweight truck. Certainly Marquardt would not have been injured *but for* Khoshaba's unlawful act, but his injury was not a *result of* that act. Because I believe the majority's interpretation of section 10 of the Act is at odds with settled principles of statutory construction and improperly expands the City's statutory obligation, I respectfully dissent.

¶ 32    Under section 10 of the Act, police officers and other public safety employees who have suffered a catastrophic line of duty injury are entitled to have their municipal employer pay 100% of their health insurance benefits, and those of their spouses and dependents, despite termination of the employment relationship due to the injury. 820 ILCS 320/10(a) (West 2010). Because, in the absence of the statute, the employee would have "no common law right to employer-provided health insurance at all, let alone fully subsidized employer-provided health insurance," our supreme court has found that the Act's mandate, under well-established principles of statutory construction, must be strictly construed in favor of the municipal

employer. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 19; see also *Schultz v. Performance Lighting, Inc.*, 2013 IL 115738, ¶ 12 (to the extent that there is any ambiguity, "statutes that create 'new liabilities' should be strictly construed in favor of persons sought to be subjected to their operation and will not be extended beyond their terms").

¶ 33 Under its home rule powers, the City, as a home rule municipality,[2] would normally be allowed to determine on what terms it would employ and compensate its employees. Ill. Const. 1970, art. VII, § 6(g), (h)-(i); *Schillerstrom Homes, Inc. v. City of Naperville*, 198 Ill. 2d 281, 286-88 (2001) (home rule municipality generally has broad power to "chart the course of [its] own growth" absent an express limitation by the General Assembly). The Act specifically recognizes that it is a limitation on a municipality's home rule powers under the Illinois Constitution. 820 ILCS 320/20 (West 2010) (home rule municipality that "employs a full-time law enforcement, correctional or correctional probation officer, or firefighter may not provide benefits to persons covered under this Act in a manner inconsistent with the requirements of this Act").

¶ 34 With that framework in mind, subsection 10(b) conditions entitlement to benefits by requiring that the catastrophic injury occur "as a result of" certain events: (i) fresh pursuit, (ii) the officer's response to what was reasonably believed to be an emergency, (iii) an unlawful act perpetrated by another, or (iv) the investigation of a criminal act. The only possible source of Marquardt's entitlement to lifetime health benefits at the City's expense is the provision for injuries sustained as a result of an unlawful act perpetrated by another. Thus, we must determine whether Marquardt was injured as a result of Khoshaba's operation of an overweight vehicle.

¶ 35 The majority concludes that he was. Given that the Act does not define the phrase "as a result of," and because dictionary definitions equate the phrase with "because of something," the majority reasons that Marquardt's disabling injury, sustained when he climbed the truck's ladder to ascertain what type of load the truck was carrying, occurred *because of* Khoshaba's unlawful act of operating an overweight vehicle. *Supra* ¶ 25. In other words, *but for* Khoshaba's unlawful operation of an overweight truck, Marquardt would not have been injured.

¶ 36 While this is not a facially unreasonable interpretation of the phrase "as a result of," if we change the scenario slightly, the fact that this interpretation expands a municipality's liability for the cost of former employees' health care becomes apparent. Assume an officer is called to respond to a late-night complaint regarding a violation of a municipal noise ordinance. When the officer arrives at the multiunit building, she ascertains the source of the noise, gains access to the building, and advises the offender (whose act is "unlawful" under the ordinance) to turn down the music. As the officer leaves, she falls down the interior steps and sustains a catastrophic back injury that necessitates her retirement. That officer would be entitled to a line of duty disability pension, but she would not be entitled to benefits under the Act because it cannot reasonably be said that her injury was sustained "as a result of" the violation of the noise ordinance. Under the majority's analysis, but for the offender's ordinance violation, the officer would not have been injured, and the municipality would therefore have to cover the

[2]See Des Plaines Ordinance No. M-67-02; Jonah Meadows, *Des Plaines Reverses Vote on County Wage, Sick Leave Rules*, Des Plaines Patch (June 19, 2017), https://patch.com/Illinois/desplaines/des-plaines-vote-again-county-wage-increase (last updated on June 20, 2017).

entirety of her health care benefits, even after retirement. This logical extension of the majority's interpretation substantially increases the municipality's exposure to liability for lifetime health benefits and, according to our supreme court's analysis in *Nowak*, should be rejected for that reason alone.

¶ 37    Additionally, when the other types of events the legislature determined would give rise to a municipal employer's obligation to pay lifetime health benefits for former employees and their families are considered, the majority's interpretation of "as a result of" becomes more tenuous. See *People v. Ringland*, 2017 IL 119484, ¶ 13 (court should not consider words and phrases in isolation, but instead should interpret each word and phrase in light of the statute as a whole). The other events in subsection 10(b) giving rise to entitlement to lifetime benefits concern activities that pose particular risks to police and other public safety employees: fresh pursuit of a suspect, responding to an emergency situation, and investigating crimes. In this context, catastrophic injuries sustained as a result of the "unlawful acts" of others would reasonably encompass similar law enforcement activities that, while not criminal or emergent in nature, present enhanced risks for catastrophic injuries, *i.e.*, pursuit of a vehicle that ran a red light, writing tickets on a busy highway, or stepping in to break up an unruly crowd in the street. Viewed in this manner, Marquardt's injury, sustained while the truck was in the weigh station, does not fit the mold.

¶ 38    Further, section 10(b) refers to an unlawful act *perpetrated* by another. The legislature's use of the word "perpetrated" connotes some active conduct by a third party. When instead the third party's unlawful conduct is not directed at the public safety employee but merely sets in motion a series of events that ultimately leads to the injury, the remote nature of the connection is inconsistent with the concept of an unlawfully perpetrated act.

¶ 39    Finally, Marquardt was injured in connection with his investigation of the type of load Khoshaba was carrying, information that was necessary for him to fill out his report, but which was unrelated to the fact that, whatever the truck was carrying, it was unlawfully overweight. When the legislature wanted to mandate lifetime health benefits for injuries sustained as a result of investigative activities, it expressly specified, as is evident from section 10(b)'s provision for benefits due to injuries sustained as a result of criminal investigations. The fact that the Act does not likewise provide for benefits in the context of injuries sustained as a result of the investigation of unlawful acts of others weighs strongly against the interpretation the majority adopts.

¶ 40    The decision in *Senese v. Village of Buffalo Grove*, 383 Ill. App. 3d 276 (2008), comports with this analysis. There, a police officer monitoring traffic from his squad car at an intersection was struck from behind by a driver operating his vehicle in violation of several provisions of the Illinois Vehicle Code. Specifically, the driver's windshield was obstructed and he failed to reduce speed to avoid a collision, both violations of the Illinois Vehicle Code. *Id.* at 277. The question the court in *Senese* was called upon to resolve was whether operation of a vehicle in violation of traffic safety laws constituted an "unlawful act" within the meaning of section 10(b). Finding that the village failed to articulate a workable definition of "unlawful act," and given the Act's failure to otherwise define the phrase, the court concluded that a motorist's operation of a vehicle in violation of the law and in a manner that injured the police officer fell within the ambit of the Act. *Id.* at 281. This is entirely consistent with the interpretation I propose above.

- 11 -

¶ 41 Although *Senese* discounted the village's argument regarding interpretation of the phrase "unlawful act perpetrated by another" in light of section 10(b)'s other provisions, it did so in the context of determining the meaning of "unlawful act." *Id.* at 280. When the issue is instead whether the catastrophic injury was sustained *as a result of* an act that the parties agree was unlawful, the issue is the relationship between the unlawful act and the injury, which *Senese* did not address. Moreover, *Senese*'s risk analysis is ultimately inconsistent with the supreme court's later decision in *Nowak*, which recognizes strict construction as the touchstone of interpretation of the Act's provisions. *Nowak*, 2011 IL 111838, ¶ 19. So while I agree that *Senese* was correctly decided because the officer's catastrophic injury was sustained as a result of the motorist's operation of his vehicle in an unlawful manner, the decision does not compel a different result here.

¶ 42 I would reverse the trial court's summary judgment order in favor of Marquardt and direct entry of summary judgment in favor of the City.