2019 IL App (1st) 181163

FIRST DIVISION
May 28, 2019

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-18-1163

| | | |
|---|---|---|
| PATRICK CRONIN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CH 20353 |
| | ) | |
| THE VILLAGE OF SKOKIE, a Municipal Corporation, | ) | Honorable |
| | ) | Franklin Ulyses Valderrama, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Griffin and Walker concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant Village of Skokie (Village) appeals from a judgment of the circuit court, awarding Patrick Cronin lifetime health insurance benefits from the Village under section 10 of the Public Safety Employee Benefits Act (Act or Benefits Act) (820 ILCS 320/10 (West 2012)). For the following reasons, we affirm.

¶ 2                    I. BACKGROUND

¶ 3    Mr. Cronin worked as a full-time firefighter and emergency medical technician for the Village for more than 30 years. On February 24, 2013, he went to the hospital because of pain that he began experiencing after transporting a patient who appeared to be in cardiac arrest on a

stretcher. Mr. Cronin never returned to work after that incident, and it is that incident that he claims entitles him to benefits under the Benefits Act.

¶ 4    Mr. Cronin acknowledged that he was diagnosed with an ascending aortic aneurysm approximately one year before the February 2013 incident. But Mr. Cronin continued working as a full-duty firefighter from March 2012 to February 2013, during which time he experienced no heart-related symptoms, such as chest tightness, pain, or shortness of breath.

¶ 5    At 8 a.m. on February 24, 2013, Mr. Cronin began a 24-hour shift at the firehouse. At approximately 7:58 p.m., an EMS call came in for a cardiac arrest. Mr. Cronin was in the truck that followed the ambulance to the call location. The paramedics went into the home with their equipment and told Mr. Cronin to bring the stretcher, so he did. Mr. Cronin described the patient as "very big," guessing that the individual weighed about 300 pounds. Mr. Cronin was holding up the stretcher when the paramedics "kind of dropped" the patient onto it. Mr. Cronin felt a pain and "thought [he] had pulled a muscle in [his] chest."

¶ 6    Mr. Cronin continued to feel chest discomfort and started experiencing additional symptoms as the night wore on—including a headache, lightheadedness, and nausea. Because his symptoms "kept getting worse," Mr. Cronin was transported to the emergency room by ambulance at approximately 6 a.m. After consulting with his doctor and a surgeon, Mr. Cronin had surgery to replace his aortic valve on May 1, 2013. In September 2013, Mr. Cronin was still having problems with his chest and decided to see if he was eligible for a disability pension. He applied for a pension with the Village's Firefighters' Pension Board (Board or Pension Board), and specifically requested an occupational disease disability pension. On the application, Mr. Cronin explained his disability as follows: "After open heart surgery to repair upper aorta and replace aortic valve, I continue to experience chest pain, dizzy spells, fatigue and [am] unable to

perform physically what I had been able, prior to surgery."

¶ 7      The Pension Board held a hearing on Mr. Cronin's application on March 17, 2014, which Mr. Cronin did not attend. On multiple occasions during the hearing, the hearing officer incorrectly stated that Mr. Cronin had applied for a line-of-duty disability pension, rather than the occupational disease disability pension. At the conclusion of the hearing, four Board members voted in favor of granting Mr. Cronin a line-of-duty disability pension, and one dissented, believing instead that Mr. Cronin should have been awarded a nonduty disability pension. On April 9, 2014, the Board issued its written order awarding Mr. Cronin a line-of-duty disability pension pursuant to section 4-110 of the Illinois Pension Code (40 ILCS 5/4-110 (West 2010)).

¶ 8      On March 18, 2014, Mr. Cronin filed his application for benefits under the Benefits Act. The Village denied his application on August 4, 2014, explaining that, after reviewing the materials presented to it, it was "unable to determine that [he] [was] entitled to free health insurance benefits under the [Act]." On December 19, 2014, Mr. Cronin filed his complaint in this case, challenging the Village's denial of his application for health insurance benefits.

¶ 9      In January 2017, the parties filed cross-motions for summary judgment. The circuit court granted Mr. Cronin's motion. In its written order of July 13, 2017, the court found that, under our supreme court's decision in *Village of Vernon Hills v. Heelan*, 2015 IL 118170, the award of a line-of-duty disability pension established, as a matter of law, that the February 24, 2013, incident caused Mr. Cronin's catastrophic injury and therefore Mr. Cronin met the criteria for an award of benefits found in section 10(a) of the Benefits Act. The court then considered whether Mr. Cronin had also met the additional requirement, under section 10(b) of the Benefits Act, that the catastrophic injury must have occurred "as a result of" one of four specific situations: "(1) a

response to fresh pursuit; (2) a response to what is reasonably believed to be an emergency; (3) an unlawful act of another; or (4) the investigation of a criminal act."

¶ 10     The court observed that Mr. Cronin argued in his motion for summary judgment that he "reasonably believed" the incident on February 24, 2013, was "in response to an emergency," and the Village did not contest that issue. The court found that Mr. Cronin therefore also had met the requirements of section 10(b) and held that he was entitled to health insurance benefits under section 10 of the Benefits Act.

¶ 11     On August 11, 2017, the Village filed a motion for reconsideration, arguing that (1) the court's ruling was inconsistent with legal precedent construing section 10(b), as "no Illinois appellate court has ever stated that the mere award of a line-of-duty disability pension forecloses an employer from litigating whether a catastrophic injury was 'caused' by one of the four elements found in Section 10(b) of the [Act]"; (2) the Pension Board's findings should not be accorded deference for purposes of section 10(b); and (3) that the Pension Board itself did not find that Mr. Cronin's disability was caused by the incident of February 24, 2013.

¶ 12     On January 4, 2018, the circuit court granted the Village's motion for reconsideration and vacated its order granting summary judgment in favor of Mr. Cronin. The court instructed both parties to file briefs on the following issue: "what level of causation is required in establishing 'as a result of' to show a firefighter was responding to what was reasonably believed to be an emergency under Section 10(b) of [the Act]?"

¶ 13     The parties filed the requested briefs. Both parties relied on extensive medical opinion evidence. The Village insisted that Mr. Cronin had failed to present *definitive* medical evidence establishing that his symptoms were a result of the February 24, 2013, incident. The circuit court disagreed. On May 16, 2018, it again granted summary judgment in favor of Mr. Cronin and

against the Village. In its written order, the circuit court concluded that there was "no issue of material fact that the symptoms [Mr.] Cronin experienced, such as chest pain, fatigue and dizziness were a 'clear consequence and effect' of his response to what he reasonably believed to be an emergency and occurred 'because of' his response to the Incident." The court found that Mr. Cronin had met his burden of proof on this issue and was entitled to judgment as a matter of law.

¶ 14    This appeal followed.

¶ 15                                    II. JURISDICTION

¶ 16    The Village timely filed its notice of appeal on June 1, 2018. This court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303, governing appeals from final judgments entered by the circuit court in civil cases. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 17                                     III. ANALYSIS

¶ 18    This case was decided on cross-motions for summary judgment. "Summary judgment is proper when 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Bremer v. City of Rockford*, 2016 IL 119889, ¶ 20 (quoting 735 ILCS 5/2-1005(c) (West 2008)). Where, as here, parties have filed cross-motions for summary judgment, "they agree that only questions of law are involved and invite the court to decide the issues based on the record." *Id.* Our review of whether summary judgment was appropriate is *de novo*. *Id.*

¶ 19    The purpose of the Benefits Act "is to continue the provision of employer-provided health insurance coverage for public safety employees and their families in the event that an

employee is killed or catastrophically injured in the line of duty." *Marquardt v. City of Des Plaines*, 2018 IL App (1st) 163186, ¶ 18. Section 10 of the Act sets out the criteria for the award of such benefits. It provides:

> "(a) An employer who employs a full-time law enforcement, correctional or correctional probation officer, or firefighter, who, on or after the effective date of this Act suffers a catastrophic injury or is killed in the line of duty shall pay the entire premium of the employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee until the child reaches the age of majority or until the end of the calendar year in which the child reaches the age of 25 if the child continues to be dependent for support or the child is a full-time or part-time student and is dependent for support. ***
>
> *  *  *
>
> (b) In order for the law enforcement, correctional or correctional probation officer, firefighter, spouse, or dependent children to be eligible for insurance coverage under this Act, the injury or death must have occurred as the result of the officer's response to fresh pursuit, the officer or firefighter's response to what is reasonably believed to be an emergency, an unlawful act perpetrated by another, or during the investigation of a criminal act." 820 ILCS 320/10 (West 2012).

¶ 20    Section 10(a) of the Benefits Act required Mr. Cronin to demonstrate that he suffered a catastrophic injury in the line of duty, and section 10(b) required him to show that the injury occurred in one of four limited circumstances, including—as pertinent to this case—in "response to what is reasonably believed to be an emergency." 820 ILCS 320/10 (West 2012). If Mr. Cronin has made the section 10(a) showing—that he suffered a catastrophic injury in the line of

duty—then he has established that he suffered a catastrophic injury at work, and the question that remains is whether the work that caused that injury falls into one of the specific section 10(b) activities.

¶ 21    On appeal, the Village argues that the court erred in finding that Mr. Cronin met the requirements of either section. However, as we discuss in greater detail in this opinion, much of its argument rests on a misperception of what questions remain under section 10(b) once section 10(a) has been satisfied. We address each of the subsection requirements in turn.

¶ 22         A. Mr. Cronin Met the Requirements of Section 10(a) as a Matter of Law

¶ 23    It is undisputed that Mr. Cronin was awarded a line-of-duty disability pension on April 9, 2014, and our supreme court made clear in *Heelan*, 2015 IL 118170, that the award of a line-of-duty disability pension establishes that an employee meets the requirements of section 10(a) of the Benefits Act, as a matter of law.

¶ 24    In *Heelan*, the defendant was a police officer with a preexisting medical condition in his right hip that was discovered only after it was aggravated when he slipped and fell on the ice while responding to an emergency police call. *Id.* ¶¶ 4-5. Treatment of that preexisting condition aggravated the same preexisting condition in his left hip. *Id.* ¶ 5. Ultimately, the officer had both of his hips replaced and was unable to return to work. *Id.* He applied for and received a line-of-duty disability pension pursuant to section 3-114.1 of the Illinois Pension Code (40 ILCS 5/3-114.1 (West 2010)). *Heelan*, 2015 IL 118170, ¶ 7. The village that had employed the officer filed a complaint for a declaratory judgment that it was not responsible under the Act to pay the defendant's health insurance benefits. *Id.* ¶ 9. Conceding that the officer met the requirements of section 10(b) of the Act, because he was responding to an emergency call, the village argued that the officer had not suffered a catastrophic injury as required by section 10(a). *Id.* The circuit

court disagreed, finding the village owed the officer benefits under the Act, and the appellate court affirmed. *Id.* ¶¶ 12-13.

¶ 25 Our supreme court also affirmed, in an opinion tracing the history of its decisions on this issue. In *Krohe v. City of Bloomington*, 204 Ill. 2d 392 (2003), the court had construed the phrase "catastrophic injury" under the Benefits Act as synonymous with an injury resulting in a line-of-duty pension; in *Nowak v. City of Country Club Hills*, 2011 IL 111838, it had explained that "catastrophic injury" under the Benefits Act is a term of art that means an injury that results in the award of line-of duty disability pension; and in *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, it had noted that the award of a line-of-duty pension meant it was "undisputed" that the employee had suffered a catastrophic injury within the meaning of section 10(a) of the Benefits Act. *Heelan*, 2015 IL 118170, ¶¶ 20-23. The *Heelan* court rejected the suggestion that an employer was entitled to relitigate any of these issues in response to an employee's claim for benefits under the Benefits Act. Instead, as a matter of statutory construction, the court in *Heelan* expressly held as follows:

"Because the legislature intended an injured public safety employee to be eligible for benefits under section 10(a) of the Act whenever his or her injuries were sufficient to qualify for a line-of-duty disability pension, the pension board's award establishes *as a matter of law* that the public safety employee suffered a catastrophic injury. [Citation.] In the case at bar, the appellate court concluded: 'Accordingly, where it is uncontroverted that a line-of-duty disability pension has been awarded, section 10(a) is satisfied, and there is no need to engage in discovery or present evidence regarding the claimant's injury.' [Citation.] We agree and so hold." (Emphasis in original.) *Id.* ¶ 25.

¶ 26 The Village offers a couple of reasons why this unambiguous pronouncement should not

apply in Mr. Cronin's case and why the issue of whether Mr. Cronin satisfied the requirements of section 10(a) remains open. We find neither of them persuasive.

¶ 27 The Village points out that Mr. Cronin did not request a line-of-duty disability pension, but instead asked for an occupational disease disability pension, and that at the hearing before the Pension Board the hearing officer misstated that Mr. Cronin had applied for a line-of-duty disability pension. Our supreme court, however, was very clear that it is the "*award*" of a line-of-duty disability pension that establishes a catastrophic injury as a matter of law. (Emphasis in original.) *Id.*

¶ 28 The Village also argues that it is "problematic" for it to be bound in this case to a finding of fact derived from the Board's award of a line-of-duty disability pension because the Village did not have "notice" that in the pension application proceedings Mr. Cronin might receive such a pension. We reject this argument for several reasons.

¶ 29 First, Mr. Cronin filed his application for pension benefits in October 2013, which was before our supreme court held, in *Bremer*, 2016 IL 119889, that an award of an occupational disease disability pension does not satisfy section 10(a) of the Benefits Act. In *Bremer*, our supreme court clarified that a public employee "cannot establish a catastrophic injury under section 10(a) of the Benefits Act by simply showing that he suffered an injury resulting from his service as a firefighter or an injury that occurred in the course of his employment. Rather, he must establish an injury that resulted in a line-of-duty disability pension." *Id.* ¶ 26. Mr. Cronin applied for his pension prior to this holding, when it was still entirely possible that an award of what he requested—an occupational disease disability pension—would also have satisfied the requirements of section 10(a) of the Benefits Act.

¶ 30 Moreover, our supreme court in *Heelan* rejected the entire premise for the argument that

the Village is making here when it suggests that it is unfair to bind it to a finding made by the Pension Board when it did not participate in that proceeding. As the court explained:

"[O]ur analysis does not involve collateral estoppel, but rather statutory construction. [The plaintiff's] award of a line-of-duty disability pension establishes that he suffered a catastrophic injury *as a matter of law*.

\* \* \*

\*\*\* [T]o the extent that the [v]illage's inability to litigate at [the defendant's] disability pension proceeding refers to his catastrophic injury as provided in section 10(a) of the Act, the enactment of the statute itself afforded the [v]illage all of the process that it was due." (Emphasis in original and internal quotation marks omitted.) *Heelan*, 2015 IL 118170, ¶¶ 28-37.

¶ 31    In short, this case does not present some kind of unusual exception to *Heelan*, and the requirements of section 10(a) of the Benefits Act were met as a matter of law.

¶ 32        B. Mr. Cronin Met the Requirements of Section 10(b) of the Benefits Act

¶ 33    Recognizing that *Heelan* limits its section 10(a) arguments, the Village attempts to frame most of its arguments as disputing Mr. Cronin's ability to meet the requirements of section 10(b). Mr. Cronin takes the position that he has satisfied section 10(b) by demonstrating that his injury "occurred as the result of" his response to the cardiac arrest call on February 24, 2013, which he "reasonably believed to be an emergency" (820 ILCS 320/10(b) (West 2012)). In arguing that Mr. Cronin failed to meet this burden of proof under section 10(b), the Village places great emphasis on the phrase "occurred as the result of" Mr. Cronin's preexisting ascending aortic aneurysm and the inconclusive medical evidence as to what caused the aggravation of his

aneurysm.

¶ 34    Most of the Village's arguments fail to appreciate the limited scope of what actually remained to be decided in Mr. Cronin's case under section 10(b), once section 10(a) had been satisfied as a matter of law. The circuit court recognized this in its initial decision in this case, but appears to have lost sight of it on rehearing.

¶ 35    Section 10(a) requires that a public employee suffer a catastrophic injury and that he or she do so while "*in the line of duty*." (Emphasis added.) 820 ILCS 320/10(a) (West 2012). In this case, then, the question before us with respect to section 10(b) cannot be whether Mr. Cronin has shown his catastrophic injury happened in the line of duty (*i.e.*, at work), but rather is whether the catastrophic injury suffered in the line of duty "occurred as the result of" one of the four specific line-of-duty scenarios presented in section 10(b).

¶ 36    To be sure, *Heelan* does not foreclose the possibility that an employee who has received a line-of-duty disability pension may not be entitled to benefits under the Act because that employee does not meet the additional criteria for an award of benefits under section 10(b). The question of whether section 10(b) criteria have been met has been a real issue in several recent cases. See, *e.g.*, *Marquardt*, 2018 IL App (1st) 163186, ¶ 20 (police officer's entitlement to benefits under section 10(b) of the Act turned on whether his injury from stepping up onto a truck to inspect an overweight load was "the result of *** an unlawful act perpetrated by another" (internal quotation marks omitted)); *Wilczak v. Village of Lombard*, 2016 IL App (2d) 160205, ¶ 15 (firefighter's entitlement to benefits under section 10(b) of the Act turned on whether his injury from lifting a disabled citizen who suffered from multiple sclerosis from the floor to a bed "was sustained in response to what was reasonably believed to be an emergency").

¶ 37    As these cases demonstrate, there may be factual issues regarding causation where the

fact finder is looking for the connection between the employee's injury and one of the four specific scenarios listed in section 10(b). In such cases, it is proper to focus on whether a causal connection satisfying the phrase "occurred as the result of" has been shown. Compare *Marquardt*, 2018 IL App (1st) 163186, ¶ 24 ("we conclude that [the plaintiff's] catastrophic knee injury was clearly a consequence or effect of [the criminal's] unlawful act of driving an overweight truck"), with *id.* ¶ 31 (Mason, J., dissenting) ("Certainly [the plaintiff] would not have been injured *but for* [the criminal's] unlawful act, but his injury was not a *result of* that act." (Emphases in original.)).

¶ 38     Here, however, in contrast to those cases cited above, there are no section 10(b) factual issues. In this case, there was evidence of only one work-related injury—the incident on February 24, 2013. The Village offered absolutely no evidence that any other work-related incident could be the basis for Mr. Cronin's award of a line-of-duty disability pension. The causal connection between this incident and Mr. Cronin's catastrophic injury was established as a matter of law by his being awarded a line-of-duty disability pension.

¶ 39     There was also no genuine issue of material fact as to whether this incident met one of the four specific section 10(b) criteria. Mr. Cronin presented evidence that his actions on February 24, 2013, were a "response to what [he] reasonably believed to be an emergency" (820 ILCS 320/10(b) (West 2012)), and the Village presented no evidence to the contrary.

¶ 40     In short, because the Village presented absolutely no evidence to dispute Mr. Cronin's evidence that he met the criteria of section 10(b), there were no disputed factual issues on section 10(b) and thus summary judgment was properly awarded to Mr. Cronin.

¶ 41     The Village offers several reasons that it believes the causation requirement remains an issue in this case, notwithstanding Mr. Cronin's award of a line-of-duty disability pension and

the Village's own failure to dispute either that the February 24, 2013, incident was the basis for that award or that Mr. Cronin's actions on that day were a response to what he reasonably believed to be an emergency.

¶ 42    The Village contends that courts cannot rely on any finding of causation made by the Pension Board in its award of a line-of-duty disability pension because the Benefits Act is to be narrowly construed and pension laws are to be construed liberally. Compare *Bremer*, 2016 IL 119889, ¶ 32 (regarding benefits), with *Carmichael v. Laborers' & Retirement Board Employees' Annuity & Benefit Fund*, 2018 IL 122793, ¶ 24 (regarding pensions).

¶ 43    But under *Heelan*, we are required to accept a pension board's award of a pension as equivalent to a finding that an employee suffered a catastrophic injury in the line of duty. If we are required to accept that finding, we are required to accept the causal connection between the employee's catastrophic injury and the employee's work. As the supreme court noted in *Heelan*, its interpretation of section 10(a) has been in play since *Krohe* was decided in 2003, and "the legislature has not altered [the supreme] court's construction of 'catastrophic injury' as used in section 10(a) of the Act." *Heelan*, 2015 IL 118170, ¶ 27. And the supreme court's interpretation of a statute "is considered part of the statute itself until the legislature amends it contrary to that interpretation." (Internal quotation marks omitted.) *Id.* So, notwithstanding any tenet of statutory construction, the award of a line-of-duty disability pension means that something at work caused a catastrophic injury; that finding by the pension board binds municipalities and courts in our interpretation of the Benefits Act.

¶ 44    The Village also argues that the aggravation of a preexisting condition cannot be an injury contemplated by the Benefits Act and that Mr. Cronin clearly had a preexisting condition. But our supreme court has recognized that in some cases an employee's entitlement to both a

line-of-duty pension and to benefits under the Benefits Act will be the result of work stresses on a preexisting condition. Indeed, in *Heelan* the plaintiff had preexisting osteoarthritis which was aggravated by his work-related injury. *Id.* ¶ 5. In the line of cases leading up to *Heelan*, our supreme court also recognized that preexisting injuries might play a role in the award of pensions and benefits under the Benefits Act. The court noted in one of those cases:

> "[T]here are cases in which" "the condition that renders the officer permanently disabled will result not from a discreet, one-time injury but rather from the accumulation of several prior injuries or the aggravation of a preexisting injury or condition." *Nowak*, 2011 IL 111838, ¶ 21.

¶ 45 The Village's remaining argument is that it cannot be "collaterally estopped" by any finding of the Pension Board. It cites to *Pedersen v. Village of Hoffman Estates*, 2014 IL App (1st) 123402, and *Oskroba v. Village of Hoffman Estates*, 404 Ill. App. 3d 692 (2010), *abrogated on other grounds*, *Gaffney*, 2012 IL 110012. In these decisions, the courts recognized that "collateral estoppel" would not bar a municipality from disputing an employee's entitlement to benefits, since the municipality was a separate entity from the pension board. *Pedersen*, 2014 IL App (1st) 123402, ¶¶ 42-47; *Oskroba*, 404 Ill. App. 3d at 697. In both of these cases, the municipality had a genuine dispute, which the courts recognized it was entitled to litigate, as to whether the work incident that caused the catastrophic injury was the employee's response to what he "reasonably believed to be an emergency." *Pedersen*, 2014 IL App (1st) 123402, ¶¶ 51-58; *Oskroba*, 404 Ill. App. 3d at 699-700.

¶ 46 Mr. Cronin is not suggesting that collateral estoppel applies here. As our supreme court explained in *Heelan*, municipalities are bound by the award of a line-of-duty disability pension as a matter of statutory construction, not collateral estoppel. The Pension Board's award of a

line-of-duty disability pension is controlling only as to section 10(a) of the Benefits Act. *Heelan*, 2015 IL 118170, ¶ 28. As both *Heelan* and this decision make clear, a municipality remains free to dispute whether the line-of-duty activity that caused the catastrophic injury meets one the four specified criteria in section 10(b).

¶ 47    In summary, because Mr. Cronin was awarded a line-of-duty disability pension by the Pension Board, he met the requirements of section 10(a) of the Benefits Act—that he suffered a catastrophic injury in the line of duty—as a matter of law. Mr. Cronin also met the requirements of section 10(b): the only work-related incident that was presented as a cause of his injury was his act of holding the stretcher as a cardiac patient was dropped onto it and he presented uncontradicted evidence that he reasonably believed he was responding to an emergency. Accordingly, Mr. Cronin is entitled to benefits under the Act, and the circuit court properly granted summary judgment in favor of Mr. Cronin and against the Village.

¶ 48                                    IV. CONCLUSION

¶ 49    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 50    Affirmed.